Scott R. Torpey (Cal. SB#153763)
Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
Telephone:   (248) 351-3000
Facsimile:   (248) 351-3802
Email:   storpey@jaffelaw.com

-and-

Jeffrey A. Worthe (Cal. SB# 080856)
Worthe, Hanson & Worthe
1851 E. First St., Ste. 900
Santa Ana, California 92705
Telephone:   (714) 285-9600
Facsimile:   (714) 285-9700
Email:   jworthe@whwlawcorp.com
Attorneys for Defendant United Air Lines, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL NIPPON AIRWAYS COMPANY, LTD )<br>)<br>) | Case No. C07-03422 EDL<br>Hon. Elizabeth D. Laporte |
| )<br>)<br>Plaintiff,   )<br>) | **ANSWER TO COMPLAINT FOR DAMAGES** |
| )<br>vs.   )<br>) | **JURY DEMAND**<br><br>**AFFIRMATIVE DEFENSES** |
| UNITED AIR LINES, INC.,   )<br>)<br>Defendant   )<br>) | **COUNTER-COMPLAINT FOR DAMAGES** |

Defendant, UNITED AIR LINES, INC. ("UAL"), by and through its attorneys, Jaffe

Raitt Heuer & Weiss, P.C., for its Answer to Complaint for Damages filed by plaintiff All

Nippon Airways Company ("ANA"), states the following:

## NATURE OF THE ACTION

1.      This is an action for negligence in which plaintiff seeks compensatory damages, pre-judgment and post-judgment interest, attorneys' fees and costs for damage to its property, a Boeing Model 777 commercial airliner.

**ANSWER:**

While expressly denying any responsibility or liability for the damages of which ANA complains in its Complaint for Damages, UAL admits the allegations of paragraph 1 only to the extent they generally describe the subject matter and nature of this lawsuit. To the extent the allegations of paragraph 1 imply UAL's responsibility and liability for the damages plaintiff seeks in the instant lawsuit, UAL denies the allegations of paragraph 1, as they are untrue.

2.      Plaintiff's instant action arises principally out of the defendant UAL's negligence, which directly and proximately caused monetary damages to be sustained by ANA.

**ANSWER:**

UAL denies the allegations of paragraph 2, as they are untrue.

## THE PARTIES

3.      At all relevant times, ANA was and is a foreign corporation organized and existing under and by virtue of the laws of Japan, with its principal place of business in Tokyo, Japan.

**ANSWER:**

UAL is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, which are therefore deemed denied.

1407199 01

4.     At all relevant times, ANA was and is qualified to transact business in the State of California.

**ANSWER:**

UAL is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, which therefore are deemed denied.

5.     At all relevant times, plaintiff ANA was and is the owner of the aircraft damaged as a result of the defendant's negligence and other culpable conduct.

**ANSWER:**

UAL admits the allegations of paragraph 5 that ANA was and is the owner of the aircraft identified in ANA's Complaint for Damages as a Boeing model 777 commercial airliner. UAL denies the allegations of paragraph 5 that the aircraft was damaged as a result of UAL's negligence and other culpable conduct, as they are untrue.

6.     At all relevant times, defendant UAL was and is a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the State of Illinois.

**ANSWER:**

UAL admits the allegations of paragraph 6.

7.     At all relevant times, defendant UAL was and is engaged in, and qualified to transact business in the State of California, with an agent for the service of process located at The Prentice-Hall Corporation System, Inc., P.O. Box 526036, Sacramento, California 95852.

1407199 01

**ANSWER:**

UAL admits the allegations of paragraph 7.

## JURISDICTION

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a) because plaintiff is seeking damages for more than $75,000 and there is

complete diversity of citizenship between plaintiff ANA, who is a citizen or subject of a

foreign state (Japan), and defendant UAL, who is a citizen of the State of Delaware.

**ANSWER:**

Paragraph 8 sets forth legal conclusions for which no responsive pleading is required,

which therefore are deemed denied.

9.    Defendant UAL is subject to personal jurisdiction of this Court because defendant: (i)

maintains an office and has a registered agent for service of process in the State of

California; (ii) is authorized to do business in the State of California; and (iii)

continuously and systematically conducts, transacts, solicits business or engages in

other conduct that creates substantial revenues within the State of California.

**ANSWER:**

Paragraph 9 sets forth legal conclusions for which no responsive pleading is required,

which therefore are deemed denied.

## INTRADISTRICT ASSIGNMENT
### (Civil L.R. 3-5(b))

10.    Pursuant to Civil L.R. 3-2(c), this action is properly assigned to the San Francisco

Division as a substantial part of the events or omissions which give rise to this claim

occurred at the San Francisco International Airport in the County of San Francisco.

**ANSWER:**

Paragraph 10 sets forth legal conclusions for which no responsive pleading is required, which therefore are deemed denied. UAL states affirmatively, however, that San Francisco International Airport is located in San Mateo County.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

11.    On October 7, 2003, during a regularly scheduled passenger flight departing from San Francisco, California, an ANA Boeing B777 aircraft (Reg. No. JA709A) designated as ANA's Flight NH007 ("NH007"), sustained substantial damage to its right wing as a result of a collision with a UAL Boeing B777 aircraft (Reg. No. N222UA) designated as UAL's flight UA809 ("UA809") (the "Accident"). The Accident was caused by: (i) UA809's flight crew's negligent operation of UA809; (ii) UAL's ground crew's negligent performance of a pushback operation; and (iii) UAL's ramp controller's negligent performance of his duties.

**ANSWER:**

UAL admits the allegations of paragraph 11 that a collision occurred between flight NH007 and flight UA809 on October 7, 2003. UAL denies the remainder of the allegations of paragraph 11, as they are untrue.

12.    At the time of the collision, flight NH007 was under power and taxiing along the center line of Taxiway A north of Gate G102.

**ANSWER:**

UAL admits that, at the time of the collision, flight NH007 was under power and taxiing. UAL denies the remaining allegations of paragraph 12, as they are untrue.

1407199 01

13.     At the time of the collision, flight UA809 was undergoing a pushback operation from

Gate G102 under tow of a UAL pushback tractor (tug) and crew.

**ANSWER:**

UAL denies the allegations of paragraph 13, as they are untrue.

14.     NH007 had received clearance from UAL's ramp controller to push back from Gate

G95 and to continue towing to the engine start point.

**ANSWER:**

UAL denies the allegations of paragraph 14, as they are untrue

15.     NH007 called UAL's ramp controller for clearance to taxi and almost simultaneously,

UA909 called its ramp controller for clearance to commence pushback from Gate G102.

UAL's ramp controller cleared NH007 to proceed to Spot 10 on Taxiway A and UA809

was instructed to standby.

**ANSWER:**

UAL denies the allegations of paragraph 15, as they are untrue.

16.     UAL's ramp controller advised UA809 that he would call back in one minute. Less than

thirty seconds later, the ramp controller cleared UA809 to push back as NH007 was

progressing along the centerline of Taxiway A toward Spot 10.

**ANSWER:**

UAL is without knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 16, which are therefore deemed denied.

1   17.   NH007 was cleared by the Federal Aviation Administration ("FAA") Ground Control to

2         proceed past Spot 10 and taxiway to and hold short of Runway One left.

3   **ANSWER:**

4         UAL is without knowledge or information sufficient to form a belief as to the truth of

5   the allegations of paragraph 17, which are therefore deemed denied.

6

7   18.   UA809 was pushed back from Gate G102 and stopped where UA809's right wing tip

8

9         intruded into the path of Taxiway A and was in a position to contact NH007's right

10        wing tip at the time of the collision.

11  **ANSWER:**

12        UAL denies the allegations of paragraph 18, as they are as untrue.

13

14  19.   The right wingtips of both aircraft collided when NH007 was progressing along the

15

16        centerline of Taxiway A near Spot 10.

17  **ANSWER:**

18        UAL denies the allegations of paragraph 19, as they are untrue.

19

20  20.   As a result of the foregoing, plaintiff ANA has sustained damage, for which defendant

21        should be held liable, in whole or in part, under theories of negligence arising by virtue

22        of the appropriate application of foreign, state and federal law, including federal

23        common law and the law of the state of California.

24

25  **ANSWER:**

26        UAL denies the allegations of paragraph 20, as they are untrue.

27

28

ANSWER TO COMPLAINT FOR DAMAGES, JURY DEMAND
AFFIRMATIVE DEFENSES AND COUNTER-COMPLAINT FOR DAMAGES
7

1407199.01

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANT UAL
### (Negligence – Property Damage)

21.    Plaintiff repeats, reiterates and realleges each and ever allegation contained in

paragraphs 1 through 20, inclusive, of this Complaint with the same force and effect as

if hereinafter set forth in full.

**ANSWER:**

UAL restates the foregoing allegations and answers.

22.    On October 7, 2003, the UA809 flight crew was engaged in a pushback operation and

had final authority for UA809's movement.

**ANSWER:**

UAL admits its flight crew was engaged in a pushback operation on October 7, 2003.

UAL denies the remaining allegations of paragraph 22, as they are untrue

23.    UA809's flight crew had a clear and unobstructed view of NH007 during NH007's taxi

and UA809's pushback.

**ANSWER:**

UAL denies the allegations of paragraph 23, as they are untrue.

24.    UA809's captain was directly responsible for his aircraft and had the authority and

obligation to order the pushback crew to stop the pushback.

**ANSWER:**

UAL admits UA809's captain was responsible for his aircraft and had the authority to

order the pushback crew to stop the pushback. UAL denies the remaining allegations of

1407199 01

paragraph 24, as they are untrue. Furthermore, UAL affirmatively states the pushback had stopped well before the collision occurred.

25. UA809's flight crew was aware of NH007's position and destination during UA809's entire pushback operation

**ANSWER:**

UAL denies the allegations of paragraph 25, as they are untrue.

26. UA809's flight crew was in direct communication with UA809's tug driver during the entire pushback operation. UA809's captain observed NH007 taxiing and communicated with UA809's pushback crew regarding clearance between the two aircraft.

**ANSWER:**

UAL denies the allegations of paragraph 26, as they are untrue.

27. UA809's flight crew operated UA809 so close to NH007 as to create a collision hazard.

**ANSWER:**

UAL denies the allegations of paragraph 27, as they are untrue.

28. UA809's flight crew operated UA809 in a careless or reckless manner when it parked a non-cleared airplane with its wing in an active taxiway and/or in the path of a cleared taxiing aircraft.

**ANSWER:**

UAL denies the allegations of paragraph 28, as they are untrue.

29. UA809's flight crew failed to see and avoid a collision when they allowed UA809 to be pushed into the path of a cleared taxiing aircraft. UA809's flight crew should have ordered the tug driver to stop the pushback operation prior to entering the path of NH007. Alternatively, UA809's flight crew should have ordered the tug driver to continue to push UA809 out of the hazardous position in which it had been parked.

**ANSWER:**

UAL denies the allegations of paragraph 29, as they are untrue.

30. The negligence of defendant's flight crew proximately caused or substantially contributed to the damages to plaintiff's aircraft.

**ANSWER:**

UAL denies the allegations of paragraph 30, as they are untrue.

31. As a result of the foregoing, ANA suffered damages in the form of repair costs in the amount of $3,106,233.49, and damages for loss of use in excess of $1,500,000, plus interest.

**ANSWER:**

UAL denies the allegations of paragraph 31, as they are untrue.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANT UAL
### (Negligence – Property Damage)

32. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 20 [sic], inclusive, of this Complaint with the same force and effect as if hereinafter set forth in full.

**ANSWER:**

UAL restates the foregoing allegations and answers

33.    On October 7, 2003, the ramp controller at Terminal G of San Francisco International Airport was an employee of defendant UAL. The Terminal G ramp controller was responsible for directing all aircraft operating in Boarding Area G and the surrounding non-movement areas.

**ANSWER:**

UAL admits the allegations of paragraph 33 that the ramp controller at Terminal G of San Francisco International Airport was its employee. UAL denies the remaining allegations of paragraph 33, as they are untrue.

34.    NH007 relied on defendant UAL's ramp controller to: (a) provide proper clearance and instruction for taxiing; (b) issue traffic advisories and safety alerts; (c) maintain separation of aircraft operating in the vicinity of Terminal G; (d) ensure that no collisions occurred; and (e) organize and expedite the flow of traffic.

**ANSWER:**

UAL is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34, which are therefore deemed denied

35    It was and is the primary purpose and obligation of the defendant UAL's ramp controller to prevent a collision between aircraft operating in the system and to organize and expedite flow of traffic in the areas under its control in and about Terminal G.

**ANSWER:**

1407199 01

1    UAL denies the allegations of paragraph 35, as they are untrue.

2

3    36.    It was and is the duty of defendant UAL's ramp controller to issue traffic advisories and

4    safety alerts.

5    **ANSWER:**

6    UAL denies the allegations of paragraph 36, as they are untrue.

7

8

9    37.    It was and is the duty of defendant UAL's ramp controller to pay attention to all aircraft

10    and not focus on one area to exclusion of other.

11    **ANSWER:**

12    UAL denies the allegations of paragraph 37, as they are untrue.

13

14    38.    Defendant UAL's ramp controller was and is concurrently responsible with pilots to

15    maintain separation of aircraft and avoid collisions and is concurrently liable if he fails

16    to do so.

17

18    **ANSWER:**

19    UAL denies the allegations of paragraph 38, as they are untrue.

20

21    39.    Defendant UAL's ramp controller knowingly cleared NH007 and UA809 to the same

22    space.

23

24    **ANSWER:**

25    UAL denies the allegations of paragraph 39, as they are untrue.

26

27

28

40. Defendant UAL's ramp controller cleared UA809 to pushback less than 30 seconds after clearing NH007 to Spot 10 despite knowing NH007 could not possibly clear the area in 30 seconds

**ANSWER:**

UAL denies the allegations of paragraph 40, as they are untrue.

41. NH007 reasonably believed defendant UAL's ramp controller's instructions were safe.

**ANSWER:**

UAL is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41, which therefore are deemed denied.

42. Defendant UAL's ramp controller provided no instructions to NH007 to stop at Spot 10 or as to when to contact FAA Ground Control. Defendant's ramp controller did not instruct any plane to stop at a designated area and contact FAA Ground Control during the relevant period.

**ANSWER:**

UAL denies the allegations of paragraph 42, as they are untrue.

43. Defendant UAL's ramp controller turned his attention elsewhere during the relevant period, including to the opposite side of the airport at Gates 81-85.

**ANSWER:**

UAL denies the allegations of paragraph 43, as they are untrue

1407199 01

44.    Defendant UAL's ramp controller was not watching UA809's initial pushback while looking at Gate 80 and telephoning the foreman.

**ANSWER:**

UAL denies the allegations of paragraph 44, as they are untrue.

45.    Defendant UAL's ramp controller cleared UA809 to pushback without knowledge of NH007's position. Defendant's ramp controller should have held UA809 until NH007 had cleared the area.

**ANSWER:**

UAL denies the allegations of paragraph 45, as they are untrue.

46.    Defendant UAL's ramp controller had reason to know of the likelihood of collision and should have issued a traffic advisory or safety alert.

**ANSWER:**

UAL denies the allegations of paragraph 46, as they are untrue.

47.    Defendant UAL's ramp controller negligently failed to advise either aircraft of traffic conditions and each other's respective positions.

**ANSWER:**

UAL denies the allegations of paragraph 47, as they are untrue.

48    Defendant UAL's ramp controller neglected his duty to avoid collisions and failed to alert NH007 or UA809 of the other's proximity.

**ANSWER:**

UAL denies the allegations of paragraph 48, as they are untrue.

49.    Defendant UAL's ramp controller failed to see what was visible and discernible and issue warnings to UA809 to give the right of way to NH007.

**ANSWER:**

UAL denies the allegations of paragraph 49, as they are untrue.

50.    Defendant UAL's ramp controller's failure to provide proper instructions, warnings, traffic advisories, and safety alerts constituted negligence

**ANSWER:**

UAL denies the allegations of paragraph 50, as they are untrue.

51.    The negligence of the defendant's ramp controller proximately caused or substantially contributed to the damages to plaintiff's aircraft.

**ANSWER:**

UAL denies the allegations of paragraph 51, as they are untrue.

52.    As a result of the foregoing, ANA suffered damages in the form of repair costs in the amount of $3,106,233.49, and damages for loss of use in excess of $1,500,000, plus interest.

**ANSWER:**

UAL denies the allegations of paragraph 52, as they are untrue

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST DEFENDANT UAL
### (Negligence – Property Damage)

53.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 20 [sic], inclusive, of this Complaint with the same force and

effect as if hereinafter set forth in full.

**ANSWER:**

UAL restates the foregoing allegations and answers.


54.    On October 7, 2003, the pushback of UA809 was performed by a pushback crew

consisting of employees of defendant UAL, including a tug driver and a wingwalker.

**ANSWER:**

UAL admits the allegations of paragraph 54.


55.    Defendant UAL's tug driver had the responsibility for a safe dispatch and clearance.

**ANSWER:**

UAL denies the allegations of paragraph 55, as they are untrue.


56.    Defendant UAL's tug driver was responsible for determining the number and position

of wingwalkers for the pushback operation. Defendant's tug driver had one wingwalker

for the pushback located on the side of UA809 opposite to the traffic on Taxiway A,

including NH007.

**ANSWER:**

UAL admits there was one wingwalker for the pushback located on the port side of the

aircraft. UAL denies the remaining allegations of paragraph 56, as they are untrue.

1407199 01

57.     It is the responsibility of the tug driver and the wingwalker to ensure and maintain

safety clearance for aircraft movement and to stop the push if there is any question

about clearance.

**ANSWER:**

UAL admits its tug driver and wingwalker have a responsibility to stop a push to

evaluate and clear any potential conflict. UAL denies the remaining allegations of paragraph

57, as they are untrue.

58.     Defendant UAL's tug driver pushed back UA809 from Gate G102 and stopped where

UA809's right wing tip intruded into the path of Taxiway A and was in a position to

contact NH007's right wing tip at the time of the collision. The tug driver was obligated

to yield right-of-way before intruding on the taxiway.

**ANSWER:**

UAL denies the allegations of paragraph 58, as they are untrue.

59.     Defendant's tug driver was contacted by the captain of UA809 during the pushback

operation and alerted to the presence of NH007. In response to the captain's question

about clearance, although the tug driver did not know the location of NH007, he stated,

"No problem, I've got you."

**ANSWER:**

UAL denies the allegations of paragraph 59, as they are untrue.

1407199.01

60.    The tug driver looked to the right, away from NH007, and continued pushing UA809.
The tug driver failed to properly assess and respond to the situation after being
questioned by the UAL captain.

**ANSWER:**

UAL denies the allegations of paragraph 60, as they are untrue.

61.    Defendant UAL's tug driver pushed UA809 for approximately one minute, at least forty
(40) seconds of which was after NH007 was in the direct line of sight of the tug driver
and the proximity of NH007 should have been obvious to the tug driver. The tug driver
pushed UA809 into the path of NH007 and then stopped the push moments before the
planes collided.

**ANSWER:**

UAL denies the allegations of paragraph 61, as they are untrue.

62.    One wingwalker was insufficient and/or on the wrong side of UA809 to assist in a safe
pushback operation. An additional wingwalker would have seen NH007 and known
UA809 was intruding into the taxiway, in unsafe proximity to NH007.

**ANSWER:**

UAL denies the allegations of paragraph 62, as they are untrue.

63.    Defendant UAL's tug driver, who had the best view of NH007, not only failed to
maintain a safe distance, he misled UAL's flight crew into believing there was adequate
clearance.

**ANSWER:**

1    UAL denies the allegations of paragraph 63, as they are untrue.

2

3    64.    Defendant UAL's tug driver was negligent in parking UA809 where its wing interfered

4    with NH007 when it should have stopped the push earlier or continued to push UA809

5    to its intended destination safely out of the way of outbound traffic.

6    **ANSWER:**

7

8    UAL denies the allegations of paragraph 64, as they are untrue.

9

10    65.    The primary cause of the accident was UAL's tug driver's abandonment of UA809

11    while its right wing was intruding into the path of NH007 which was authorized by the

12    FAA ground controller to proceed through Spot 10 to its location at the time of the

13    collision.

14    **ANSWER:**

15

16    UAL denies the allegations of paragraph 65, as they are untrue.

17

18    66.    The negligence of defendant's pushback crew proximately caused or substantially

19    contributed to the damage to plaintiff's aircraft.

20    **ANSWER:**

21

22    UAL denies the allegations of paragraph 66, as they are untrue.

23

24    67.    As a result of the foregoing, ANA suffered damages in the form of repair costs in the

25    amount of $3,106,233.49, and damages for loss of use in excess of $1,500,000, plus

26    interest.

27    **ANSWER:**

28

ANSWER TO COMPLAINT FOR DAMAGES, JURY DEMAND,
AFFIRMATIVE DEFENSES AND COUNTER-COMPLAINT FOR DAMAGES
19

1407199 01

UAL denies the allegations of paragraph 67, as they are untrue.

WHEREFORE, defendant, United Air Lines, Inc., respectfully requests that this Court dismiss plaintiff's Complaint for Damages with prejudice, award United Air Lines, Inc., its costs and attorney fees, and grant any other relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 3-6, United Air Lines, Inc., hereby demands a jury trial in this matter.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Plaintiff's own contributory negligence defeats its claims in whole or in part.

3. Plaintiff's own comparative negligence and/or willful misconduct and/or violation of federally enacted safety regulations, including, but not limited to, FAR 91.3, 91-13, and 91-111, defeat plaintiff's claims in whole or in part.

4. The terms of the parties' Standard Ground Handling Agreement, and "Annex A" and "Annex B" thereto (collectively attached hereto as **Exhibit 1**) defeat plaintiff's claims in whole or in part, and/or cap UAL's liability to plaintiff, if any, at $1,500,000.00.

5. The doctrine of primary assumption of risk bars plaintiff's claims in whole or in part.

6. Plaintiff's claims arise in whole or in part from an unavoidable accident for which UAL bears no responsibility or liability.

7. UAL expressly reserves the right to add to and amend its Affirmative Defenses as discovery proceeds.

1407199.01

1    Dated: July 5, 2007                          JAFFE, RAITT, HEUER & WEISS, P.C.

2                                                 By:    s/Scott R. Torpey (Cal. SB# 153763)
                                                  27777 Franklin Road, Suite 2500
3                                                 Southfield, Michigan 48034-8214
                                                  Telephone:    (248) 351-3000
4                                                 Facsimile:     (248) 351-3802
                                                  Attorneys for Defendant United Air Lines, Inc.
5

6                                                         -and-

7                                                 WORTHE, HANSON & WORTHE
                                                  By:     Jeffrey A. Worthe (Cal. SB# 080856)
8                                                 1851 E. First St., Ste. 900
                                                  Santa Ana, California 92705
9                                                 Telephone:    (714) 285-9600
                                                  Facsimile:     (714) 285-9700
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

ANSWER TO COMPLAINT FOR DAMAGES, JURY DEMAND,
AFFIRMATIVE DEFENSES AND COUNTER-COMPLAINT FOR DAMAGES

21

1407199.01

## CERTIFICATE OF SERVICE

 I hereby certify that on July 5, 2007 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Frank A. Silane
Rod D. Margo
Scott D. Cunningham
Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, CA 90067-6010

 I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

Marshall S. Turner
Condon & Forsyth LLP
7 Times Square
New York, NY 10036

Dated: July 5, 2007

       s/Scott R. Torpey
       Jaffe, Raitt, Heuer & Weiss
       27777 Franklin Road, Suite 2500
       Southfield, Michigan 48034-8214
       Phone: (248) 351-3000
       E-mail:storpey@jaffelaw.com
       Bar No: (Cal. SB #153763)

1407199.01

Scott R. Torpey     Cal. SB# 153763
Email: storpey@jaffelaw.com
Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Telephone: (248) 351-3000
Facsimile: (248) 351-3082

Jeffrey A. Worthe     Cal. SB# 080856
Email: jworthe@whwlawcorp.com
Worthe, Hanson & Worthe, a law corporation
1851 E. First St., Ste. 900
Santa Ana, CA 92705
Telephone: (714) 285-9600
Facsimile: (714) 285-9700

*Attorneys for Defendant/Counter-Plaintiff, United Air Lines.*

## DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **All Nippon Airways Co., Ltd.,** a Japanese corporation, | ) Case No. C07-03422 EDL |
| | ) |
| Plaintiff/Counter-Defendant, | ) Judge: Elizabeth D. LaPorte |
| | ) |
| vs. | ) **Counter-Complaint For:** |
| | ) |
| **United Air Lines, Inc.,** a Delaware corporation, | ) (1) Negligence |
| | ) (2) Negligence *per se* |
| Defendant/Counter-Plaintiff. | ) (3) Breach of Contract |
| | ) (4) Declaratory relief |

Defendant/counter-plaintiff United Air Lines, Inc , ("UAL") complains against plaintiff/counter-defendant All Nippon Airways Co., Ltd., ("ANA") as follows:

## THE PARTIES

1.    UAL is a Delaware corporation headquartered in Illinois. UAL is in the business of domestic and international air transportation and maintains a hub of operations at San Francisco International Airport, San Francisco, California, where the events complained of herein occurred.

2    ANA is a Japanese corporation that is in the business of providing air transportation. ANA operates flights out of San Francisco International Airport, San Francisco, California.

## JURISDICTION

3.    Based on the citizenship of the parties and the amount in controversy, which is well over $700,000 00, this Court has jurisdiction over this matter under 28 U.S.C § 1332. Venue is proper in this Court.

## INTRADISTRICT ASSIGNMENT

4.    Pursuant to Civil L.R. 3-2(c), this action has been assigned properly to the San Francisco Division as a substantial part of the events or omissions which give rise to this claim occurred at the San Francisco International Airport, which is located in the County of San Mateo.

## GENERAL ALLEGATIONS

5.    On October 7, 2003, at San Francisco International Airport, San Francisco, California, a Boeing 777-281, JA709A, owned by ANA and operated as flight NH007, collided on the ground with a Boeing 777-22B, N222UA, owned by UAL and operated as flight UA809.

6.    The collision resulted in extensive damage to the right wing of UAL's aircraft, which has necessitated a more than $700,000.00 total cost of repair, an amount that accounts for only a portion of the damages UAL has incurred.

7.    No injuries were sustained by either airplane's crews or passengers.

---

Counter-Complaint for Negligence, Negligence *Per Se*, Breach of Contract, and Declaratory Relief

2

1407199 01

1

## **COUNT ONE: NEGLIGENCE**

2
3

8     UAL incorporates the allegations contained in paragraphs 1 through 6 above as if fully restated herein.

4
5
6

9.     ANA owed legal duties to UAL including, but not limited to, the duty to conduct its operations in a safe and prudent manner so as not to jeopardize, damage, or interfere with the property, equipment, and operations of UAL.

7
8
9

10.     ANA breached the legal duties owed to UAL by failing to operate its flight NH007 in a safe and prudent manner so as not to jeopardize the property, equipment, and operations of UAL.

10
11

11.     As a direct and proximate cause of ANA's breach of legal duties, UAL's Boeing 777-22B, N222UA, operated as flight UA809, sustained extensive damage to its right wing.

12
13
14
15

12.     ANA's negligent breach of duty directly and proximately caused UAL to sustain monetary damages due to the need to accommodate customers who had been passengers on UAL's damaged aircraft and were left without air transportation due to ANA's negligence and the damages to UAL's aircraft.

16
17
18
19
20
21

13.     ANA's negligent breach of duty is also the direct and proximate cause of further damages and costs to UAL, including, but not limited to, costs related to UAL's inability to use its damaged aircraft for the period of time during which it was taken out of service and repaired, costs related to the extensive repairs to and remediation of UAL's damaged aircraft, costs related to the diminution in value of UAL's damaged aircraft after repair and remediation, and costs and attorneys' fees.

22

## **COUNT TWO: NEGLIGENCE *PER SE***

23
24

14.     UAL incorporates the allegations contained in paragraphs 1 through 13 as if fully stated herein.

25
26
27

15.     ANA's operation of its aircraft at the time of the accident violated several Federal Aviation Regulations ("FARs"), including, but not limited to, FAR 91.3, which required the pilot in command of the aircraft to exercise direct responsibility and final authority

28

as to the operation of the aircraft; FAR 91-13, which forbids careless or reckless operation of an aircraft so as to endanger the property of another; and FAR 91-111, which forbids the operation of an aircraft so close to another aircraft so as to create a collision hazard.

16.    ANA's violation of FARs 91.3, 91-13, and 91-111, and other safety regulations proximately caused the October 7, 2003, ground collision between ANA's aircraft and UAL's aircraft, which caused UAL to incur significant damages.

17.    FARs 91.3, 91-13, 91-111, and other safety regulations were designed to prevent occurrences like the collision between ANA's aircraft and UAL's aircraft.

18.    UAL belongs to the class for whose protection FAR 91.3, 91-13, 91-111, and other safety regulations were adopted.

19.    It is presumed that ANA failed to exercise due care.

20.    ANA's presumed failure to exercise due care is the proximate cause of UAL's significant damages resulting from the collision between ANA's aircraft and UAL's aircraft, which include, but are not limited to, costs related to the need to accommodate passengers on UAL's damaged aircraft, costs related to UAL's inability to use its damaged aircraft for the period of time during which it was taken out of service and repaired, costs related to the extensive repairs to and remediation of UAL's damaged aircraft, costs related to the diminution in value of UAL's damaged aircraft after repair and remediation, and costs and attorneys' fees.

## COUNT THREE: BREACH OF CONTRACT

21.    UAL incorporates the allegations contained in paragraphs 1 through 20 as if fully stated herein.

22.    UAL and ANA entered into a Standard Ground Handling Agreement ("SGHA") on or about August 14, 1991. UAL and ANA entered into "Annex A" thereto on or about the same date. Thereafter, UAL and ANA entered into "Annex B" to the Standard Ground Handling Agreement, which became effective on September 25, 2001. These documents are attached collectively to this complaint as **Exhibit 1.**

23.    Under the SGHA and "Annex A," UAL, as the "Handling Company" or

"Seller," agreed to arrange for and/or provide the following services to ANA, as the "Carrier" or "Buyer":

a.    Marshalling at arrival and/or departure; and

b.    Mov[ing] aircraft under its own power in accordance with the Carrier's instructions. [**Exhibit 1**, "Annex A," §§ 6.1.1(b), R.6.7.2.]

24.    UAL and ANA agreed to the following indemnity provision in "Annex B," which expressly supersedes SGHA, Art. 8, "LIABILITY AND INDEMNITY":

4.3  Indemnity. Carrier agrees to indemnify and hold harmless Handling Company ... from and against any and all liabilities, claims, demands, suits, damages and losses, including, without limitation, all reasonable attorney's fees, costs, and expenses in connection therewith or incident thereto (including but not limited to reasonable attorneys' fees incurred by Handling Company in establishing its rights to indemnification hereunder) ... for loss of, damage to, destruction of, any property whatsoever (including, without limitation, any loss of use thereof), in any manner arising out of or in any way connected with goods or services furnished or to be furnished by Handling Company under this Agreement, all whether or not arising in tort or occasioned in whole or part by the negligence of Handling Company of any type or degree ... [**Exhibit 1**, "Annex B," ¶ 4.3.]

25.    UAL has performed all conditions, covenants, and promises required of it under the terms of the SGHA and Annexes thereto.

26.    The collision complained of herein, and all resulting damages to UAL's aircraft complained of herein, arose out of and/or were connected with UAL's furnishing of services under the SGHA and Annexes thereto.

27.    ANA has breached the SGHA and Annexes thereto by refusing and/or failing to indemnify UAL for the damages that UAL's aircraft sustained in the collision complained of herein, which include, but are not limited to, costs related to the need to

1    accommodate passengers on UAL's damaged aircraft, costs related to UAL's inability to use its

2    damaged aircraft for the period of time during which it was taken out of service and repaired,

3    costs related to the extensive repairs to and remediation of UAL's damaged aircraft, and costs

4    related to the diminution in value of UAL's damaged aircraft after repair and remediation.

5        28.    UAL is additionally entitled to recover its costs and attorneys' fees pursuant to

6    the terms of the SGHA and Annexes thereto.

7                    **COUNT FOUR: DECLARATORY RELIEF**

8        29.    UAL incorporates the allegations contained in paragraphs 1 through 28

9    as if fully stated herein.

10        30.    UAL and ANA entered into a Standard Ground Handling Agreement

11    ("SGHA") on or about August 14, 1991. UAL and ANA entered into "Annex A" thereto on or

12    about the same date. Thereafter, UAL and ANA entered into "Annex B" to the Standard

13    Ground Handling Agreement, which became effective on September 25, 2001. These contracts

14    are attached collectively to this complaint as **Exhibit 1**.

15        31.    Under the SGHA and "Annex A," UAL, as the "Handling Company" or

16    "Seller," agreed to arrange for and/or provide the following services to ANA, as the "Carrier"

17    or "Buyer":

18            a.    Marshalling at arrival and/or departure; and

19            b.    Mov[ing] aircraft under its own power in accordance with the Carrier's

20                instructions. [**Exhibit 1**, "Annex A," §§ 6.1.1(b), R 6.7.2.]

21        32.    UAL and ANA agreed to the following release and indemnity provisions

22    in "Annex B" (**Exhibit 1**), which supersedes SGHA, Art. 8, "LIABILITY AND

23    INDEMNITY":

24            4.2 <u>Release</u>. Carrier hereby releases Handling Company . . . from any

25            and all liabilities, claims, demands, suits, damages and losses, including,

26            without limitation, all attorneys' fees, costs and expenses in connection

27            therewith or incident thereto which may accrue to Carrier against Handling

28

---

Counter-Complaint for Negligence, Negligence *Per Se*, Breach of Contract, and Declaratory Relief

6

Company for loss of, damage to, destruction of, any property owned or operated by Carrier, including without limitation any aircraft, in any manner arising out of or in any way connected with the services furnished or to be furnished by Handling Company under this Agreement.

      4.2.1  <u>Hull Damage Exception</u>.  Notwithstanding the provisions of 4.2 above, Handling Company shall indemnify Carrier against any physical loss of or damage to Carriers [sic] aircraft caused by any negligent act or omission of Handling Company or by Handling Company's actual intent to cause such loss or damage, provided that Handling Company's obligation with respect to such loss or damage shall not, in any event (i) exceed USD 1,500,000, or (ii) apply to such loss or damage of an amount less than USD 3,000.

      4.3  <u>Indemnity</u>.  Carrier agrees to indemnify and hold harmless Handling Company . . . from and against any and all liabilities, claims, demands, suits, damages and losses, including, without limitation, all reasonable attorney's fees, costs, and expenses in connection therewith or incident thereto (including but not limited to reasonable attorneys' fees incurred by Handling Company in establishing its rights to indemnification hereunder) . . . for loss of, damage to, destruction of, any property whatsoever (including, without limitation, any loss of use thereof), in any manner arising out of or in any way connected with goods or services furnished or to be furnished by Handling Company under this Agreement, all whether or not arising in tort or occasioned in whole or part by the negligence of Handling Company of any type or degree. . . .

    33.    An actual case or controversy within this Court's jurisdiction exists between UAL and ANA, in that the incident and damages complained of herein arose out of and/or were connected with UAL's furnishing of services under the SGHA and Annexes thereto.

    34    The case or controversy between UAL and ANA cannot be resolved without this

1  Court's action under 28 U.S.C. § 2201.

2     35.     No basis exists in law or fact that would preclude application of the release and

3  indemnity provisions contained in the SGHA and "Annex B," thus capping any of UAL's

4  liability to ANA at $1.5 million and requiring ANA to indemnify UAL for all of UAL's

5  damages arising from the incident complained of herein, which include, but are not limited to,

6  costs related to the need to accommodate passengers on UAL's damaged aircraft, costs related

7  to UAL's inability to use its damaged aircraft for the period of time during which it was taken

8  out of service and repaired, costs related to the extensive repairs to and remediation of UAL's

9  damaged aircraft, costs related to the diminution in value of UAL's damaged aircraft after

10  repair and remediation, and costs and attorneys' fees.

11     WHEREFORE, UAL respectfully requests that this Court enter judgment against ANA

12  in its favor for:

13         a.     Actual damages for losses directly and proximately caused by ANA's

14               negligence, which include, but are not limited to, costs related to the need to

15               accommodate passengers on UAL's damaged aircraft, costs related to the

16               repair and remediation of UAL's damaged aircraft, costs related to UAL's

17               inability to use its damaged aircraft for the period of time during which it

18               was taken out of service and repaired, and costs related to the diminution in

19               value of the damaged aircraft after repair and remediation;

20         b.     The costs of suit in this action, including reasonable costs and attorneys'

21               fees;

22         c.     Declaratory relief, providing that (i) UAL is released of all liability toward

23               ANA for any damages ANA may claim against UAL and/or ANA's

24               damages, if any, are capped at $1.5 million, and (ii) ANA must indemnify

25               and hold harmless UAL for all its damages complained of herein; and

26         d.     Such other and further relief as this Court may deem proper.

27     Additionally, UAL requests that this Court enter an order declaring the parties' rights and

28

---

Counter-Complaint for Negligence, Negligence *Per Se*, Breach of Contract, and Declaratory Relief

8

1  obligations under the Standard Ground Handling Agreement and the Annexes thereto

2

3  Dated: July 5, 2007                    JAFFE RAITT HEUER & WEISS, P.C.

4                                         By:    s/Scott R. Torpey, Cal. SB# 153763
                                          27777 Franklin Road, Suite 2500
5                                         Southfield, Michigan 48034-8214
                                          (248) 351-3000
6
                                          Jeffrey A. Worthe, Cal. SB# 080856
7                                         Worthe, Hanson & Worthe, a law corporation
                                          1851 E. First St., Ste. 900
8                                         Santa Ana, CA 92705
                                          (714) 285-9600
9                                         Attorneys for Defendant/Counter-Plaintiff,
10                                        United Air Lines, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28