1  Gary Jay Kaufman,  Esq.  State Bar No. 92759
2  Marijana Stanojevic, Esq   State Bar No. 222425
3  LAW OFFICES OF GARY JAY KAUFMAN, INC
4  1925 Century Park East, Suite 2350
5  Los Angeles, California  90067
6  Telephone:  (310) 286-2202
7  Facsimile:  (310) 712-0023
8  Email:  gary@garyjkaufmanlaw.com
9
10  Attorney for specially appearing Defendants
11  Experienced Internet Com, Inc ,
12  Patricia Quesada, and Sylvia Bedoya
13
14

15                     **UNITED STATES DISTRICT COURT**
16                    **NORTHERN DISTRICT OF CALIFORNIA**

17
18
19  ALL NIPPON AIRWAYS COMPANY,          )          Case No  C07-03422 EDL
20  LTD.                                 )          Hon. Elizabeth D  Laporte
21                    Plaintiff,          )
22        vs.                            )
23                                       )
24  UNITED AIR LINES, INC ,              )
25                                       )          **Defendant United Air Lines'**
26                    Defendant.          )          **Motion to Compel Production**
27  _____    )          **of Person Most Knowledgeable**
28  UNITED AIR LINES, INC.               )          **and for Protective Order**
29                                       )
30                    Counter-Plaintiff,  )          **Hearing Date: November 13, 2007**
31        vs.                            )          **Hearing Time: 9:00 a.m.**
32                                       )
33  ALL NIPPON AIRWAYS COMPANY,          )
34  LTD.                                 )
35                    Counter-Defendant.  )

1  Defendant, United Air Lines, Inc., by and through its attorneys, Jaffe Raitt Heuer &

2  Weiss, P.C., hereby gives notice that the instant Motion to Compel Production of Person Most

3  Knowledgeable and for Protective Order will come for hearing in the courtroom of the

4  Honorable Elizabeth D. Laporte on November 13, 2007, at _____ a.m./p.m.

5  Defendant United Air Lines, Inc. ("United") hereby moves this Court (1) for entry of an

6  order under Fed. R. Civ. P. 37 compelling plaintiff All Nippon Airways Co., Ltd., ("ANA") to

7  produce for deposition under Fed. R. Civ. P. 30(b)(6) the person most knowledgeable of certain

8  issues pertaining to the parties' Standard Ground Handling Agreement and Annexes thereto

9  (collectively, the "SGHA") and (2) for entry of a protective order under Fed. R. Civ. P. 26(c)(7)

10  to prevent the release and dissemination of certain highly confidential, proprietary information

11  produced in discovery and to limit its exposure to attorneys' eyes only. In accordance with Fed.

12  R. Civ. P. 26(c) and 37(a)(2)(A), United provides the Declaration of Scott Torpey, attached as

13  **Exhibit 2** to the supporting brief, to establish that it has in good faith conferred or attempted to

14  confer with ANA in an effort to secure ANA's cooperation without court action.

15                         s/Scott R. Torpey

16                         Jaffe, Raitt, Heuer & Weiss

17                         27777 Franklin Road, Suite 2500

18                         Southfield, Michigan 48034-8214

19                         Phone: (248) 351-3000

20                         E-mail:storpey@jaffelaw.com

21                         Bar No: (Cal. SB#153763)

22

23                               And

24

25                         Jeffrey A. Worthe (Cal. SB#080856)

26                         Worthe, Hanson & Worthe

27                         1851 E. First St., Ste. 900

28                         Santa Ana, California 92705

29                         Phone: (714) 285-9600

30                         E-mail: jworthe@whwlawcorp.com

Scott R. Torpey (Cal SB#153763)
Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
Telephone:    (248) 351-3000
Facsimile:    (248) 351-3802
Email:         storpey@jaffelaw.com

         -and-

Jeffrey A. Worthe (Cal SB# 080856)
Worthe, Hanson & Worthe
1851 E. First St., Ste. 900
Santa Ana, California 92705
Telephone:    (714) 285-9600
Facsimile:    (714) 285-9700
Email:         jworthe@whwlawcorp.com
Attorneys for Defendant United Air Lines, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALL NIPPON AIRWAYS COMPANY, LTD. | ) | Case No. C07-03422 EDL |
| Plaintiff, | ) | Hon. Elizabeth D. Laporte |
| vs. | ) | |
| | ) | |
| UNITED AIR LINES, INC., | ) | **Defendant United Air Lines'** |
| | ) | **Brief in Support of Motion to** |
| Defendant. | ) | **Compel Production of Person** |
| | ) | **Most Knowledgeable and for** |
| UNITED AIR LINES, INC. | ) | **Protective Order** |
| | ) | |
| Counter-Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| ALL NIPPON AIRWAYS COMPANY, LTD. | ) | |
| | ) | |
| Counter-Defendant. | ) | |

1

# <u>TABLE OF CONTENTS</u>

2    UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA ........... 1

3    STATEMENT OF ISSUES TO BE DECIDED ........................................................... iii

4    INTRODUCTION ......................................................................................................... 4

5    STATEMENT OF FACTS AND PROCEDURE .............................................................. 5

6    A.   THE MOTION TO COMPEL UNDER FED. R. CIV. P. 37............................... 5

7       1.   The SGHA and Its Relevance to This Litigation ....................................... 5

8       2.   ANA's Refusal to Produce a PMK.............................................................. 5

9           a.   The 1998 SGHA and Annexes Thereto............................................ 7

10          b.   A Distinction without a Real Difference......................................... 8

11      3.   This Motion to Compel .............................................................................. 11

12   B.   THE MOTION FOR PROTECTIVE ORDER UNDER FED. R. CIV. P. 26(c) ....... 11

13   ARGUMENT ............................................................................................................... 13

14   C.   THIS COURT SHOULD ENTER AN ORDER COMPELLING PRODUCTION OF THE
15        PMK............................................................................................................... 13

16   D.   THIS COURT SHOULD ENTER THE PROPOSED PROTECTIVE ORDER............ 15

17   CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Ashmus v. Calderon*, 31 F. Supp. 1175 (N.D. Cal. 1998) .......................................... 13

*Hickman v. Taylor*, 329 U.S. 495 (1947) ............................................................... 14

*Safeco Ins. Co. of Am. V. Rawstron*, 181 F.R.D. 441 (C.D. Cal. 1998) ................. 15

## Other Authorities

WEBSTER'S NEW COLLEGIATE DICTIONARY 699 (1981) .......................................... 8

## Rules

Fed. R. Civ. P. 26(b)(1) ...................................................................................... 14

Fed. R. Civ. P. 26(c) ................................................................................... passim

Fed. R. Civ. P. 26(c)(7) ................................................................................. 2, 15

Fed. R. Civ. P. 30(a) .......................................................................................... 14

Fed. R. Civ. P. 30(b)(6) ............................................................................. 2, 4, 13

Fed. R. Civ. P. 37 ..................................................................................... 2, 4, 15

## Treatises

7 MOORE'S FEDERAL PRACTICE § 30.02[3] (3rd ed.) .......................................... 14

7 MOORE'S FEDERAL PRACTICE § 33.02[2][b] ................................................. 15

1

## STATEMENT OF ISSUES TO BE DECIDED

2    I     WHETHER THIS COURT SHOULD COMPEL PRODUCTION OF THE

3          PERSON MOST KNOWLEDGEABLE OF CERTAIN ISSUES PERTAINING TO

4          THE SGHA BECAUSE THE SGHA CONSTITUTES A BASIS OF UNITED'S

5          COUNTER-CLAIMS FOR NEGLIGENCE AND DECLARATORY RELIEF, AS

6          WELL AS ONE OF ITS AFFIRMATIVE DEFENSES, AND ANA HAS DENIED

7          THE APPLICABILITY OF THE SGHA TO THE FACTS OF THIS CASE,

8          THEREBY PLACING THE SGHA'S TERMS, EFFECT, AND ITS

9          UNDERLYING NEGOTIATIONS SQUARELY AT ISSUE?

10   II.   WHETHER THIS COURT SHOULD ENTER THE PROPOSED PROTECTIVE

11         ORDER ATTACHED AS EXHIBIT 1 TO PREVENT THE RELEASE AND

12         DISSEMINATION OF CERTAIN HIGHLY CONFIDENTIAL, PROPRIETARY

13         INFORMATION PRODUCED IN DISCOVERY?

**INTRODUCTION**

After the parties conducted a meet and confer to discuss the issues that have resulted in discovery impasse, United was forced to file the instant motion under Fed. R. Civ. P. 37 and 26(c)(7). ANA wrongfully refuses to produce for deposition under Fed. R. Civ. P. 30(b)(6) the person most knowledgeable ("PMK") of the terms of the SGHA and its underlying negotiations, claiming that the SGHA has no relevance to this case. ANA's belief that the SGHA has no relevance is incorrect, especially in light of its own pleadings, which accuse United of negligence in providing services under the SGHA. The SGHA also forms the basis of two of United's counter-claims against ANA (breach of contract and declaratory relief) and one of its affirmative defenses. ANA denies that the SGHA and its terms have any legal impact in this case. Therefore, the SGHA, its terms, and the facts and circumstances concerning its negotiations and the parties' underlying intent in entering the SGHA are all relevant issues in this matter. This Court should enter an order compelling ANA to cooperate and produce the PMK.

ANA has also refused to stipulate to an appropriate protective order to make for attorneys' eyes only review certain documents containing highly confidential, proprietary information produced in the course of discovery available, although the parties have made headway as to certain language to which they both can agree. A protective order is necessary because the parties, who are business competitors, will produce documents containing very sensitive proprietary information concerning secret financial matters. United risks giving ANA a competitive boost by exposing this information to ANA in general, but realizes that certain information contained in the requested documents is or may be relevant. Therefore, United seeks entry of the attached proposed Protective Order (**Exhibit 1**), which provides a two-tiered protective procedure for documents and other information produced during the course of discovery and imparts the highest level of confidentiality — for attorney's eyes only — only to those documents containing the most sensitive financial information. This proposed Protective Order incorporates changes upon which the parties were able to come to an agreement, as fully explained in the Declaration of Scott Torpey accompanying this motion and brief as **Exhibit 2**.

*Defendant United Air Lines' Motion to Compel Production of Person Most Knowledgeable and for Protective Order*
1450148.01

4

1

## STATEMENT OF FACTS AND PROCEDURE

2

**A.   THE MOTION TO COMPEL UNDER FED. R. CIV. P. 37**

3

**1.   The SGHA and Its Relevance to This Litigation**

4

On June 29, 2007, ANA filed this lawsuit against United. This action arises from an

5

October 7, 2003, ground collision between an ANA airplane and a United airplane. In its

6

Complaint for Damages, ANA alleges that United's negligence caused the collision   (*See*

7

*generally* Complaint for Damages (Doc. No. 1).) In its Affirmative Defenses, United advances

8

that the terms of the SGHA, which is attached as Exhibit 1 to Doc. No. 6, defeat ANA's "claims in

9

whole or in part, and/or cap[s] UAL's liability to plaintiff, if any, at $1,500,000.00." (Affirmative

10

Defenses (Doc. No. 6), ¶ 4.)

11

In its Counter-Complaint, United alleges a claim for breach of contract

12

(Count Three) and for declaratory relief (Count Four) based on the SGHA and

13

Annex B thereto, ¶¶ 4.2-4.3 which generally require ANA to indemnify United for

14

damages arising from its provision of services to ANA and also caps United's

15

liability for hull damage at $1.5 million. The SGHA and its Annexes are attached

16

collectively to United's Answer, Counter-Complaint, and Affirmative Defenses as

17

Exhibit 1. (*See* Counter-Complaint (Doc. No. 6), ¶¶ 21-35.) Responding to the

18

Counter-Complaint, ANA admits the parties entered into the SGHA, but denies the

19

Annexes were in effect at the time of the accident or are "applicable to the facts or

20

circumstances related to this accident or claim." (*See* Answer (Doc. No. 11), ¶¶ 22-

21

24, 30-32).

22

**2.   ANA's Refusal to Produce a PMK**

23

On September 12, 2007, United served on ANA its Amended Notice of Taking Video

24

Depositions   (Torpey Decl. (**Exhibit 2**), ¶ 2, Ex. A.) This notice requested ANA to produce its

25

PMK for deposition on November 30, 2007, with regard to the following issues related to the

26

SGHA:

27

1.   Negotiations leading up to agreement and signature of the "Standard Ground

28

Handling Agreement" (including "Annex A – Ground Handling Services"

1          and "Annex B – United Services IATA Standard Ground Handling

2          Agreement" attached to the "Standard Ground Handling Agreement").

3      2.   Interpretation and intent of the provisions within the "Standard Ground

4          Handling Agreement" (including "Annex A – Ground Handling Services"

5          and "Annex B – United Services IATA Standard Ground Handling

6          Agreement" attached to the "Standard Ground Handling Agreement")

7      3    The applicability of one or more of the terms within the "Standard Ground

8          Handling Agreement" (including "Annex A – Ground Handling Services"

9          and "Annex B – United Services IATA Standard Ground Handling

10          Agreement" attached to the "Standard Ground Handling Agreement") the

11          events of January 22, 2005 [sic] which are at issue in this litigation   [Torpey

12          Decl ¶ 2, Ex. A ]

13      In response to the PMK deposition notice, ANA flatly refused to comply with United's

14  discovery request. ANA's position is that, in the absence of any motion on its part for a protective

15  order under Fed. R. Civ. P. 26(c), it will not comply with the PMK deposition notice until ANA

16  somehow "proves its case" with respect to the SGHA issue. In other words, ANA demands that

17  United refute to ANA's satisfaction ANA's own contention that the SGHA is somehow

18  inapplicable to United's breach of contract claim and claim for declaratory relief, which are

19  expressly **premised** on the SGHA and its provisions. ANA's counsel states:

20      Further to my letter of August 30, 2007,[1] and your request for a "PMK," no such

---

[1] In correspondence of August 30, 2007, ANA's counsel stated:
As it is clear on the face of the GHA [Ground Handling Agreement] referred to in and attached to
  United's Counter Complaint that the GHA could not possibly have anything to do with any
  issue in this case, I have no intention of bringing any ANA witness to the U S. on this subject
  until United establishes some basis for this affirmative defense  Moreover, as the GHA
  appears to be United's affirmative defense, I would appreciate a response to my inquiry as to
  "what do you expect to inquire about at a deposition that could be answered through
  Interrogatories or Admissions " See my email of August 21, 2007  In any event, if United is
  serious about asserting the GHA as an affirmative defense, ANA would be entitled to ascertain
  the nature and basis of this claim before providing a corporate witness to testify on the subject
  Please describe the nature and basis of the defense and how the referenced document could
  possibly apply to any fact at issue in this case. [Torpey Decl., ¶ 3, Ex. C.]

1   witness will be provided unless you can explain how the Ground Handling

2   Agreement referred to in and attached to your Counter-Complaint could have any

3   relevance to any issue in this case and why any question regarding this agreement

4   cannot be answered through interrogatories or admissions. [Torpey Decl ¶ 3, Ex

5   B.]

6         In response to ANA's correspondence, counsel for United faxed a letter to ANA's counsel

7   on September 25, 2007, requesting a further meet and confer on the PMK issue. (Torpey Decl. ¶

8   4, Ex. D.) Curiously, rather than respond directly to United's attorneys, counsel for ANA

9   responded by faxing a letter to United States Aviation Underwriters, Inc., who is the insurer that

10  hired the undersigned to represent United. In this correspondence, ANA stood by its position that

11  the SGHA is irrelevant to this litigation. ANA also raised new issues concerning the validity of

12  the SGHA and related Annexes that United attached to its Answer and Counter-Complaint. These

13  issues are discussed fully below. (Torpey Decl. ¶ 5, Ex. E.)

14                     **a.     The 1998 SGHA and Annexes Thereto**

15        Admittedly, United may have made an unintentional mistake in appending the 1991 SGHA

16  and its Annexes as Exhibit 1 to its Affirmative Defenses and Counter-Complaint. As counsel for

17  ANA clarified in his September 25, 2007, letter to United States Aviation Underwriters, the Annex

18  B that United appended as part of Exhibit 1 states, "the terms of the Main Agreement and Annex

19  A of the SGHA of April 1998 . . . shall apply as if such terms were repeated here in full" (Doc. 6,

20  Exhibit 1, Annex B, pg. 1 PREAMBLE). (Torpey Decl. ¶ 5, Ex. E, pg. 2.) In light of this

21  language, it does appear that ANA is correct in its assertion that the 1991 SGHA is outdated

22  (Torpey Decl. ¶ 6.) Attached to his September 25, 2007, letter, counsel for ANA provided United

23  with the SGHA and Annexes thereto that were effective at the time of the October 7, 2003, ground

24  collision. (Torpey Decl. ¶ 5, Ex. E, Attachments 1-3.) Based on its review of these documents

25  and investigation into underlying circumstances, United can now confirm that the documents

26  appended to ANA's September 25, 2007, letter accurately reflect the SGHA and Annexes thereto

27  that were in effect in October 2003. This Court has stated its willingness to permit United to

28  amend its pleadings to reflect this change in information, which is something United will file very

1   shortly. (Torpey Decl. ¶ 6.)

2                       **b.     A Distinction without a Real Difference**

3           ANA's position is that the "new" SGHA and its Annexes do not support the allegations

4   United has made in its Affirmative Defenses and Counter-Complaint. In his September 25, 2007,

5   letter, counsel for ANA explained:

6           Clearly, the services that were provided to ANA under the correct SGHA; at the

7           gate; during pushback; and, during tow to the engine start line, had nothing to do

8           with any claim or defense asserted in this litigation or this accident. The same is true

9           for the Ramp Controller services that were provided to ANA. The Ramp Controller

10          services that caused this accident were provided by UAL to UAL when UA809 was

11          prematurely cleared to push into ANA's path. The services provided by UAL to

12          UAL had nothing to do with ANA's SGHA. [Torpey Decl. ¶ 5, Ex. E, pg. 3.]

13          ANA's Complaint, however, tells a different story and ties ANA's asserted injuries

14  directly to the marshalling services that United provided to ANA under the terms of the 1998

15  SGHA and Annex B thereto. Under Annex B to the 1998 SGHA, United is obligated to provide

16  "marshalling" services to ANA. (*See* Torpey Decl. ¶ 5, Ex. E, Attachment 3, 1.1.1, which

17  incorporates § 6.1.1 of the 1998 SGHA (Ex. E, Attachment 1).) "Marshalling" is not defined

18  anywhere in the 1998 SGHA or its Annex B, but 1998 SGHA clearly identifies it as a "ramp"

19  related activity. (Torpey Decl. ¶ 5, Ex. E, Attachment 1, § 6.1.1.) The dictionary definition of

20  "marshalling" defines the term to mean, essentially, "positioning" or bringing together or in order

21  in an appropriate or effective way, or "leading." *See, e.g.*, WEBSTER'S NEW COLLEGIATE

22  DICTIONARY 699 (1981). This is exactly the kind of service of positioning and/or arranging traffic

23  at the ramp that ANA alleges United was negligent in providing to ANA in the second count of

24  the Complaint:

25          33.     On October 7, 2003, the ramp controller at Terminal G of San

26          Francisco International Airport was an employee of defendant UAL. The Terminal

27          G ramp controller was responsible for directing all aircraft operating in Boarding

28          Area G and the surrounding non-movement areas.

8

*Defendant United Air Lines' Motion to Compel Production of Person Most Knowledgeable and for Protective Order*
1450148.01

1           34.     NH007 [ANA's aircraft] relied on defendant UAL's ramp controller :

2    (a) provide proper clearance and instruction for taxiing; (b) issue traffic advisories

3    and safety alerts; (c) maintain separation of aircraft operating in the vicinity of

4    Terminal G; (d) ensure that no collisions occurred; and (e) organize the flow of

5    traffic.

6           35.     It was and is the primary purpose and obligation of the defendant

7    UAL's ramp controller to prevent a collision between aircraft operating in the system

8    and to organize and expedite flow of traffic in the areas under its control in and about

9    Terminal G.

10           36.     It was and is the duty of defendant UAL's ramp controller to issue

11    traffic advisories and safety alerts.

12           37.     It was and is the duty of defendant UAL's ramp controller to pay

13    attention to all aircraft and no focus on one area to the exclusion of other.

14    [Complaint (Doc. No. 1), ¶¶ 33-37.]

15    Because ANA has alleged that United's marshalling services were negligent, the Liability

16    and Indemnity provisions of Annex B to the 1998 SGHA apply. These provisions are

17    substantively identical to those that form the basis of United's Counts Three and Four of the

18    Counter-Complaint, as well as United's SGHA-based affirmative defense:

19        <u>Release</u>.  Carrier hereby releases Handling Company, its directors, officers

20    employees and agents from any and all liabilities, claims, demands, suits, damages

21    and losses, including, without limitation, all attorney's fees, costs and expenses in

22    connection therewith or incident thereto which may accrue to Carrier against

23    Handling Company for loss of, damage to, destruction of, any property owned or

24    operated by Carrier, including without limitation any aircraft, in any manner arising

25    out of or in any way connected with the services furnished or to be furnished by

26    Handling Company under this Agreement.

27        <u>Hull Damage Exception</u>.  Notwithstanding the provisions of 4.2 above, Handling

28    Company shall indemnify Handling Company or by Handling Company's actual

*Defendant United Air Lines' Motion to Compel Production of Person Most Knowledgeable and for Protective Order*
1450148.01

9

1     intent to cause such loss or damage, provided that Handling Company's obligation

2     with respect to such loss or damage shall not, in any event (i) exceed [$1.5 million]

3     or (ii) apply to such loss or damage of an amount less than [$3,000] [2]

4     <u>Indemnity.</u> Carrier agrees to indemnify and hold harmless Handling Company . . .

5     from and against any and all liabilities, claims, demands, suits, damages and losses,

6     including, without limitation, all reasonable attorneys' fees, costs, and expenses in

7     connection therewith or incident thereto . . . for loss of, damage to, destruction of,

8     any property whatsoever . . in any manner arising out of or in any way connected

9     with goods and services furnished or to be furnished by Handling Company under

10     this Agreement, all whether or not arising in tort or occasioned in whole or part by

11     the negligence of Handling Company of any type or degree . . . . [Torpey Decl ¶ 5,

12     Ex. 5, Attachment 3, ¶ 4.]

13     What all of this means is that, cutting through all the verbiage, ANA's September 25,

14 2007, letter criticizing United for unintentionally appending outdated contract documents to its

15 Answer, Affirmative Defenses, and Counter-Complaint really highlights a distinction without a

16 real difference. Even under the documents that ANA contends constitute the operative contractual

17 relationship between the parties, ANA still alleges that United negligently provided services to it

18 under the 1998 SGHA and Annexes thereto and United still has full recourse to the Liability and

19 Indemnity provisions of Annex B to the 1998 SGHA, which are identical in all substantive aspects

20 to the "outdated" contract provisions upon which United based its Affirmative Defenses and

21 Counts Three and Four of its Counter-Complaint Therefore, the terms of the 1998 SGHA and its

22 Annexes are very much at play in this litigation, and ANA's denial of this fact places the

23 underlying negotiations, history, meaning, and effect of these documents squarely at issue. It is

24 necessary for ANA to produce its PMK as to these issues to permit United to explore these topics

---

[2] Although the limits of liability provisions in Annex B to the 1998 SGHA are left blank, Annex B provides that "except for the terms set forth in this Annex B, the terms of the Main Agreement and Annex A of the SGHA of April 1998 . . . shall apply as if such terms were repeated here in full " (Torpey Decl ¶ 5, Ex. E, Attachment 3, PREAMBLE.) The 1998 SGHA provides the $1,5 million damages ceiling for hull damage and the $3,000 floor for indemnification. (Torpey Decl. ¶ 5, Ex. E, Attachment 1, Art. 8.5.)

1  fully and fairly.

2  ### 3.    This Motion to Compel

3  United's final position is that it is necessary to depose a PMK on issues related to the 1998

4  SGHA and its applicability to this litigation in light of (1) its (soon to be amended) counter-claims

5  for breach of contract and declaratory relief, which will assert that the plain terms of the 1988

6  SGHA and its Annexes clearly require ANA to indemnify United for any damages related to the

7  October 7, 2003, collision and/or provide that United's liability, if any, for damage to ANA's

8  airplane is capped at $1.5 million, and, more significantly, (2) ANA's assertion that the 1998

9  SGHA and its Annexes have no application to the facts of this litigation, despite their clear terms

10  (*See* Torpey Decl., ¶ 7.)  In other words, the PMK deposition is calculated to uncover relevant

11  information concerning ANA's own defenses.  There is also nothing in the Federal Rules of Civil

12  Procedure that requires United to choose a certain form of discovery in relation to the SGHA or

13  somehow justify the use of a deposition to examine and test the opposing party's view of the intent

14  and meaning of a contract like the SGHA, especially when the opposing party itself has placed

15  intent and meaning squarely at issue by denying the applicability of the contract to the

16  controversy.  (*See* Torpey Decl., ¶ 8.)

17  ANA's position, on the other hand, is that it is permitted to resist lawful discovery without

18  filing a protective order under Fed. R. Civ. P. 26(c).  ANA's refusal is also premised on its belief

19  that United must somehow refute ANA's own defenses to United's cross-claims for breach of

20  contract and declaratory relief before United is entitled to conduct discovery on issues concerning

21  the meaning and application of the SGHA, issues that ANA itself has brought to the fore in light

22  of its responses to United's counter-claims.  (*See* Torpey Decl., ¶¶ 3, 5, Exhs. B, C, and E.)  ANA

23  also believes that United must justify its use of a deposition to discover the information it seeks

24  from the PMK.  ANA has not cited any court rules to support its contentions.  (*See* Torpey Decl.,

25  ¶¶ 3, 5-8.)

26  ### B.    THE MOTION FOR PROTECTIVE ORDER UNDER FED. R. CIV. P. 26(c)

27  Discovery in this lawsuit will involve the production of certain very sensitive, confidential

28  financial information concerning the operations and practices of each airline party.  As to this

1   point, both parties seem to agree. Although the parties have entered into a "Code Share"

2   Agreement that requires them to cooperate to a certain extent in their operations (ANA and United

3   are both part of the Star Alliance and as such, can sell tickets on each other's flights), they are, at

4   base, competitors in a very tight market. If one party were to gain access to the "right"

5   confidential, proprietary information regarding the other party's costs for something such as

6   overhead and profit margins, for example, it could very well gain a definite competitive edge over

7   its opponent. (Torpey Decl. ¶ 9.)

8         In particular, to support its claim for damages, United will rely in great part upon the

9   "Turns Report" relating to its 777 aircraft (N222UA) from the date of the October 7, 2003,

10   incident until the aircraft's return to service date some five weeks later after repairs were

11   completed. This document provides a profitability analysis of the subject aircraft and reveals

12   highly confidential and proprietary information regarding overhead costs, labor costs, and material

13   costs that is kept secret from United's competitors for obvious reasons. United can only produce

14   this document if a protective order is in place that permits it to designate certain sensitive materials

15   like this to attorneys' eyes only. (Torpey Decl. ¶ 9.) And, of course, this proposed protective

16   order, which is attached as **Exhibit 1**, works both ways and permits ANA to seek the same

17   protection for its own confidential and proprietary, trade secret information. This Court's own

18   Standing Order on Confidential and Sealed Documents provides the roadmap by which the parties

19   can and will make designations of "Confidential" or "Confidential – Attorneys' Eyes Only" and

20   makes it clear that over-designation may result in sanctions.

21         ANA, however, has refused to cooperate and stipulate to the proposed Protective Order

22   attached as **Exhibit 1**, although the parties have made significant headway in paring down certain

23   issues surrounding the proposed Protective Order and incorporating and deleting certain language

24   in connection with their meet and confer, as fully explained in the Declaration of Scott Torpey

25   (**Exhibit 2**) at Paragraphs 9 to 18. As explained in the Declaration, while the parties have

26   attempted to reach an agreement on all points, they have not been successful in doing so.

27   Therefore, for the reasons set forth in the Declaration of Scott Torpey detailing the parties' meet

28   and confer and their respective stances on the disputed portions of the proposed Protective Order,

1     United submits the proposed Protective Order in its present incarnation (**Exhibit 1**) and requests

2     that this Court enter this order to provide **both** parties with the full and vigorous protections

3     afforded therein.

4     **ARGUMENT**

5     **C.**     **THIS COURT SHOULD ENTER AN ORDER COMPELLING**

6           **PRODUCTION OF THE PMK**

7     United has properly noticed the PMK deposition under Fed. R. Civ. P. 30(b)(6), which

8     provides, as pertinent:

9           (6) *Notice or Subpoena Directed to an Organization.* In its notice or

10         subpoena, a party may name as the deponent a public or private corporation . . . and

11         must describe with reasonable particularity the matters for examination. The named

12         organization must then designate one or more officers, directors, or managing agents,

13         or designate other persons who consent to testify on its behalf; and it may set out the

14         matters on which each person designated will testify . . . The persons designated

15         must testify about information known or reasonably available to the organization. . . .

16     ANA's position against producing a PMK in response to United's September 12, 2007,

17     Amended Notice of Taking Video Depositions is, first and foremost, that it may resist this

18     discovery without filing a motion for protective order under Fed. R. Civ. P. 26(c). Fed. R. Civ. P.

19     30(b)(6), however, does not give ANA the option of resisting the notice for the PMK deposition

20     on its whim. Instead, it provides that ANA "**must**" designate its PMK(s) in response to the notice,

21     who then "**must**" testify on the matters that have been identified for examination. Use of the

22     word "must" designates a mandatory provision. *See Ashmus v. Calderon*, 31 F. Supp. 1175, 1187

23     (N.D. Cal. 1998) (use of word "must" denotes a mandatory provision). The only mechanism by

24     which ANA can avoid designating a PMK is by moving for a protective order under Fed. R. Civ.

25     P. 26(c), something it has not done.

26     Moreover, nothing in the Federal Rules of Civil Procedure requires a party to effectively

27     prove its case before it is entitled to obtain discovery on a given issue. "[T]he deposition

28     discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S.

1    495, 507 (1947). "Parties may obtain discovery regarding any non-privileged matter that is

2    relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). United bases two of its

3    claims (and one of its affirmative defenses) on the terms of SGHA and its Annexes. ANA admits

4    the parties entered into the 1998 SGHA but denies that it has any applicability to the subject

5    matter of this case, despite ANA's own allegations of negligence in United's provision of services

6    under the 1998 SGHA and the clear language of the provisions of the SGHA and its Annexes upon

7    which United relies for its Affirmative Defenses and Counter-Complaint, particularly Counts

8    Three and Four. Under these circumstances, ANA's views on the 1998 SGHA and its Annexes,

9    their terms, the intention underlying their adoption, and the negotiations leading to its execution

10   are all relevant. Accordingly, United should be permitted to explore ANA's position on these

11   issues fully in discovery. To this end, this Court should require ANA to produce its PMK(s) in

12   response to United's deposition notice.

13        For some reason, ANA believes United must justify its use of the deposition in relation to

14   other available discovery devices to obtain the information it seeks from ANA's corporate

15   representative concerning the SGHA. ANA, of course, is well aware of the superiority of

16   depositions upon oral examination to other forms of discovery. One authoritative text has

17   described depositions as "a key element of civil dispute resolution," noting their crucial

18   importance "not only in basic discovery but also preservation of information and establishment of

19   facts crucial to settlement or rulings on pretrial motions." 7 MOORE'S FEDERAL PRACTICE §

20   30.02[3] (3rd ed.). There simply is no need under the Federal Rules of Civil Procedure for United

21   to justify its use of such a crucial discovery mechanism to discover the information for which it

22   searches. The Rules, in fact, provide that United has a right to seek any deposition without leave

23   of court, except in very few limited circumstances that are not present here. Fed. R. Civ. P. 30(a).

24        ANA's suggestion that United should use other discovery devices is unjustified in light of

25   Fed. R. Civ. P. 30(a)(1) and simply unworkable. ANA suggests that United should use contention

26   interrogatories[3] to explore ANA's views on the applicability of the 1998 SGHA and its Annexes.

27   But, the "better" view is that contention interrogatories "are appropriate, but only after both sides

---

[3] A "contention interrogatory" is an interrogatory that inquires "into an opinion or contention that
relates to fact or the application of law to fact." 7 MOORE'S FEDERAL PRACTICE § 33.02[2][b]14

1    have had an opportunity to conduct discovery." 7 MOORE'S FEDERAL PRACTICE § 33.02[2][b]. At

2    this relatively early stage of discovery, when there are many depositions yet to be taken,

3    contention interrogatories simply are not helpful. Contrary to ANA's other recommendation,

4    requests for admission are not suited for United's purpose of eliciting information because they are

5    useful only "to establish admission of facts about which there is no real dispute." *Safeco Ins. Co.*

6    *of Am. V. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (requests for admission are not

7    principally a discovery device because their purpose is to establish certain material facts as true,

8    thus narrowing range of issues for trial).

9          In summary, ANA is entirely unjustified in its refusal to produce its PMK(s) in response to

10    United's deposition notice. Therefore, United respectfully requests that this Court enter an order

11    under Fed. R. Civ. P. 37(a) to compel ANA to produce its PMK(s).

12          **D.    THIS COURT SHOULD ENTER THE PROPOSED PROTECTIVE ORDER**

13          As explained, *supra*, United is willing to produce certain documents containing highly

14    confidential information to ANA in response to discovery requests, provided that a two-tiered

15    Protective Order is in place that permits the parties to designate certain highly sensitive documents

16    "Confidential – Attorneys' Eyes Only." Attached hereto as **Exhibit 1** is a proposed Protective

17    Order that provides just this sort of protection, consistent with Fed. R. Civ. P. 26(c)(7). This

18    Court's Standing Order on Confidential and Sealed Documents is in place to provide means by

19    which the parties can designate certain documents "Confidential" or "Confidential – Attorneys'

20    Eyes Only" and, in connection with the procedures to curb over-designation and abuse that are

21    built in to the proposed Protective Order, will protect the rights of each party and, more

22    importantly, shield this Court from any burden associated with unnecessary confidential

23    designations. Accordingly, United requests that this Court enter the proposed Protective Order for

24    the reasons set forth more fully in the Declaration of Scott Torpey, which details the parties' meet

25    and confer on the proposed Protective Order and explains and supports United's position on the

26    provisions and language upon which the parties were unable to agree.

27          **CONCLUSION**

28          ANA's refusal to comply with the PMK deposition notice and its refusal to agree to the

*Defendant United Air Lines' Motion to Compel Production of Person Most Knowledgeable and for Protective Order*
1450148.01

1    terms of a two-tiered protective order to prevent the disclosure of both parties' sensitive and

2    extremely confidential information are unjustified. Accordingly, this Court should enter an order

3    compelling ANA's immediate compliance with the PMK deposition notice and the proposed

4    Protective Order attached hereto as **Exhibit 1**.

5

6                  s/Scott R. Torpey

7                  Jaffe, Raitt, Heuer & Weiss

8                  27777 Franklin Road, Suite 2500

9                  Southfield, Michigan 48034-8214

10                 Phone: (248) 351-3000

11                 E-mail:storpey@jaffelaw.com

12                 Bar No: (Cal SB#153763)

13                       And

14

15                 Jeffrey A. Worthe (Cal. SB#080856)

16                 Worthe, Hanson & Worthe

17                 1851 E. First St., Ste. 900

18                 Santa Ana, California 92705

19                 Phone: (714) 285-9600

20                 E-mail: jworthe@whwlawcorp.com

21

22

# CERTIFICATE OF SERVICE

I am a resident of the State of Michigan, over the age of eighteen years, and not a party to the within action. My business address is 27777 Franklin Road, Suite 2500, Southfield, Michigan 48034. On October 9, 2007 I served the following document(s):

### *United Airlines' Motion to Compel Production of Person Most Knowledgeable and for Protective Order*

By:

☒ ***Electronic Service:*** I hereby certify that on October 9, 2007 I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

Marshall S. Turner                                         Frank A. Silane
Condon & Forsyth LLP                                 Rod D. Margo
7 Times Square                                             Scott D. Cunningham
New York, NY 10036                                   Condon & Forsyth LLP
                                                                     1901 Avenue of the Stars, Suite 850
Jeffrey A. Worthe                                         Los Angeles, California 90067-6010
Worthe, Hanson & Worthe
1851 East First Street, Ninth Floor
Santa Ana, California 92705

☐ ***By Facsimile:*** I caused the above-referenced document(s) to be transmitted by facsimile machine to the person(s) at the addresses set forth above.

☐ ***By Mail***: As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Southfield, Michigan in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ ***By Personal Service***: I caused the above-referenced document(s) to be personally delivered by hand to the person(s) at the address(es) set forth above.

☐ ***By Overnight Courier:*** I caused the above-referenced document(s) to be delivered by Federal Express to the person(s) at the addresses set forth above.

***Federal***: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

EXECUTED on October 9, 2007 at Southfield, Michigan

*Phyllis L. Nelson*
Phyllis L. Nelson