**EXHIBIT 2**

Scott R. Torpey (Cal. SB#153763)
Jaffe Raitt Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
Telephone:  (248) 351-3000
Facsimile:  (248) 351-3802
Email:      storpey@jaffelaw.com

-and-

Jeffrey A. Worthe (Cal. SB# 080856)
Worthe, Hanson & Worthe
1851 E. First St., Ste. 900
Santa Ana, California 92705
Telephone:  (714) 285-9600
Facsimile:  (714) 285-9700
Email:      jworthe@whwlawcorp.com   Attorneys for Defendant United Air Lines, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL NIPPON AIRWAYS COMPANY, LTD. <br><br> Plaintiff, <br><br> vs. <br><br> UNITED AIR LINES, INC., <br><br> Defendant. | Case No. C07-03422 EDL <br> Hon. Elizabeth D. Laporte |

**DECLARATION OF SCOTT TORPEY**

**STATE OF MICHIGAN**     )
                          )   SS.
**COUNTY OF OAKLAND**     )

I, Scott Torpey, being duly sworn according to law, hereby depose and states:

1.  I am a partner at the law firm of Jaffe Raitt Heuer & Weiss, P.C., in Southfield Michigan. I am duly licensed and qualified to practice law in California. I represent defendant

---
Declaration of Scott R. Torpey

1450143.01

1

United Air Lines, Inc., ("United") in the above-captioned matter, which All Nippon Airways Company, Ltd., ("ANA") filed against United on June 28, 2007. I make this Declaration in support of United's Motion to Compel Production of Person Most Knowledgeable and for Protective Order and to satisfy the requirement of Fed. R. Civ. P. 37(a)(2)(A), i.e., to certify "that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action," as well as the requirement of Fed. R. Civ. P. 26(c), i.e., to certify "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

2. I first noticed the video deposition of ANA's Person Most Knowledgeable ("PMK") on issues concerning the parties' Standard Ground Handling Agreement ("SGHA") on September 12, 2007. A true and correct copy of the September 12, 2007, Amended Notice of Taking Video Deposition and Exhibits A and B thereto is attached to my Declaration as **Exhibit A**.

3. Counsel for ANA has refused to produce the PMK for the various reasons stated in his September 14, 2007, faxed correspondence, a true and correct copy of which is attached to my Declaration as **Exhibit B**. Moreover, in correspondence of August 30, 2007, counsel for ANA provided additional explanation for ANA's refusal to comply with United's requested discovery and produce a PMK on the SGHA and certain issues underlying it. A true and correct copy of this correspondence is attached by my Declaration as **Exhibit C**.

4. I faxed a response letter to counsel for ANA on September 25, 2007, a true and correct copy of which is attached to my Affidavit as **Exhibit D**. In this correspondence, I requested a further meet and confer on the PMK issue.

5. In response, counsel for ANA faxed a letter to my client, United States Aviation Underwriters, Inc., instead of me, on September 28, 2007, essentially refusing any further meet and confer on the PMK issue. A true and correct copy of this letter is attached to my Affidavit as **Exhibit E**.

---

Declaration of Scott R. Torpey

1450143 01

2

6.  I have reviewed ANA's September 25, 2007, letter and its three attachments. It does appear from my review of the letter and its attachments, as well as information I received from United, that the United documents of which I originally had access — the 1991 SGHA and Annexes that I appended to the Answer, Affirmative Defenses, and Counter-Complaint — were outdated at the time of the October 2003 airplane collision giving rise to this action. The now-confirmed information contained in ANA's September 25, 2007, letter indicates that the 1998 SGHA and its Annexes, which are attached to ANA's September 25, 2007, letter, are the actual contract documents that were in effect at the time of the October 2003 collision that is at the heart of this lawsuit. It was not my intention or United's intention to deceive or mislead anybody or this Court by filing the 1991 SGHA and Annexes in connection with United's pleadings. It was a simple mistake. At the October 2, 2007, Initial Case Management Conference, this was explained to this Court, which then instructed United that it had until the end of October to amend its pleadings to reflect the addition of the correct documentation as an exhibit to the pleadings. I will file this motion to amend the pleadings very shortly.

7.  That stated, ANA still maintains its refusal to produce a PMK on the 1998 SGHA and its Annexes. This situation has left United at an impasse. It is necessary to depose a PMK on issues related to the SGHA and its applicability to this litigation in light of (a) United's amended counter-claims for breach of contract and declaratory relief, which assert that the plain terms of the 1998 SGHA and its Annexes in effect on the date of the subject accident clearly require ANA to indemnify United for any damages related to the October 7, 2003, collision and/or provide that United's liability, if any, for damage to ANA's airplane is capped at $1.5 million, and, more significantly, (b) ANA's assertion that the 1998 SGHA and its Annexes have no application to the facts of this litigation, despite its clear terms.

8.  ANA has not filed a motion for a protective order on the PMK issue and has not identified any authority on which it relies to force United to choose a certain form of discovery in relation to the SGHA or somehow justify the use of a deposition to examine and test the opposing party's view of the intent and meaning of a contract like the SGHA, especially when the opposing party itself has placed intent and meaning squarely at issue by denying the

Declaration of Scott R. Torpey

3

1450143.01

applicability of the contract to the controversy.

9.  Changing topics, both parties agree that discovery in this matter will involve the exchange of highly proprietary, confidential information. The parties have entered into a "Code Share" Agreement. Under that agreement, the two airlines cooperate to a certain extent in their operations (ANA and United are both part of the Star Alliance and as such, can sell tickets on each other's flights). They are at base, however, competitors in a very tight market. If one party were to gain access to the "right" confidential, proprietary information regarding the other party's costs for something such as overhead and profit margins, for example, it could very well gain a definite competitive edge over its opponent. To illustrate, to support its claim for damages, United will rely in great part upon the "Turns Report" relating to its 777 aircraft (N222UA) from the date of the October 7, 2003, incident until the aircraft's return to service date some five weeks later after repairs were completed. This document provides a profitability analysis of the subject aircraft and reveals highly confidential and proprietary information regarding overhead costs, labor costs, and material costs that is kept secret from United's competitors for obvious reasons. United can only produce this document, and others like it, if a protective order is in place that permits it to designate certain sensitive materials like this to attorneys' eyes only.

10.  On October 2, 2007, I faxed a letter to plaintiff's counsel seeking his concurrence in a proposed Protective Order, with the intent that this letter would begin the meet and confer process on the protective order issue. A true and correct copy of the letter and attached proposed Protective Order is attached hereto as **Exhibit F**.

11.  On October 5, 2007, plaintiff's counsel faxed to me a letter with his handwritten strikeouts and suggested changes to the proposed Protective Order, and another attachment that plaintiff's counsel offered as a substitute for Section II, paragraph C in the October 2, 2007, proposed Protective Order. A true and correct copy of this letter and its attachments is attached hereto as **Exhibit G**.

12.  In response to the October 5, 2007, suggested changes, I faxed an October 8, 2007,

Declaration of Scott R. Torpey

1450143.01

4

letter to plaintiff's counsel explaining my position as to several of his suggested changes and additions. A true and correct copy of this letter is attached hereto as **Exhibit H**. In light of these proposed changes, I revised the proposed Protective Order to incorporate plaintiff's proposed changes to I.A, except I rejected what I believed to be his reference to Fed. R. Civ. P. 26(f) as making no sense. Later, in his October 8, 2007, return correspondence, a true and correct copy of which is attached hereto as **Exhibit I**, defense counsel explained to me that his reference was to Fed. R. Civ. P. 26(c), so I adopted that suggested revision. Therefore, there is no remaining dispute as to Section I.A of the proposed Protective Order.

13. Plaintiff's counsel objected at Sections I.B, I.C, and I.D to language concerning the confidentiality of any "information derived" from Confidential Material. *See* **Exhibit G**, Attachment 1, pgs. 3-4. I rejected these proposed changes because the proprietary information the proposed Protective Order seeks to insulate from exposure is highly sensitive. Any information gleaned from this Confidential Material will retain its confidentiality. For instance, one can easily envision a scenario where an expert will render an opinion or arrive at conclusions based on information contained in Confidential Material. The expert's opinion or conclusion, though in a different form from the originally designated Confidential Material, should still be considered "Confidential" because, despite its form, it would recite or incorporate the substance of the originally designated Confidential Material. If the party that opposes this designation does not agree with the designation, it is free to invoke the process of de-designation set forth in the proposed Protective Order.

14. I made the additions and changes plaintiff's counsel suggested regarding Sections I.F, II.C. I also made the change to Section III plaintiff's counsel suggested, in light of this Court's Standing Order on Confidential and Sealed Documents, which places the burden of establishing confidentiality on the designating party.

15. I made the change that plaintiff's counsel suggested to the first paragraph of Section IV, which deleted the language, "and in no event will such production or disclosure be made before such notice is given." I was, however, unable to agree with plaintiff's counsel's assessment of the second paragraph of Section IV, although I did address plaintiff's counsel's

Declaration of Scott R. Torpey 5

1450143.01

Case 3:07-cv-03422-EDL    Document 25-4    Filed 10/09/2007    Page 7 of 8

concern "how a third party could possible comply with the requirement that the designating party's counsel shall make a good faith determination" by including language to permit third party designation pursuant to a good faith determination under Fed. R. Civ. P. 26(c). Plaintiff's counsel states in his October 8, 2007, letter (**Exhibit I**, pg. 2) that a third party should be able to raise the issue of confidentiality "and we and the Court should decide whether such material warrants protection." In my view, Section IV, as written, allows just this process to occur, but brings it within the proposed Protective Order, which provides procedures for doing just what plaintiff's counsel says should be done.

16    In light of plaintiff's counsel's comment regarding Section V.D of the proposed Protective Order, i.e., that he "would be willing to leave it in" (**Exhibit I**, pg. 3), I have left Section V.D in. I believe it is beneficial to do so to avoid any confusion or a situation in which a designation under the proposed Protective Order could possibly be understood to constitute a waiver of privilege.

17.    I am unable to agree to plaintiff's counsel's view of Section IX.B, which expressly permits a designating party to designate as confidential certain information provided to a party in this action. Unlike plaintiff's reading of this provision (*see* **Exhibit I**, pg. 3), the provision permits a "designating party," not the third party, to designate this information as confidential under the proposed Protective Order, subject to all of its cautionary provisions, including the requirement of a good faith determination under Fed. R. Civ. P. 26(c). Contrary to plaintiff's reading, this provision says nothing about third parties' ability to designate information as confidential.

18.    Finally, I rejected plaintiff's counsel's suggested changes to Section XI, which would significantly weaken an aggrieved party's ability to obtain injunctive relief for the release of "Confidential — Attorneys Eyes Only" material produced during discovery. The proposed Protective Order, as presented to this Court, relieves this Court of a significant amount of burden in enforcing the proposed Protective Order in the event that this material of the highest proprietary quality is released. As written, the proposed protective order automatically entitles the aggrieved party to injunctive relief and other damages. Under

Declaration of Scott R. Torpey        6

1450143.01

plaintiff's proposal, the aggrieved party would have to apply to this Court for injunctive relief and other damages, a request that would then wend its way to a conclusion in the normal course of business. There should be no loss of time in addressing unauthorized disclosure of highly proprietary business information. Plaintiff's proposal is just too cumbersome and time-consuming to have any real benefit to the party who seeks protection from disclosure under the proposed Protective Order. Accordingly, I have refused to make the changes plaintiff's counsel has suggested to Section XI of the proposed Protective Order.

**FURTHER AFFIANT SAYETH NOT.**

<u>s/Scott R. Torpey [original notarized signature page to follow]</u>

Subscribed and sworn to before me this _____ day of October 2007

_____
Notary Public in and for the State of _____
My Commission Expires: _____