1  Frank A. Silane (State Bar No.: 90940)
   Scott D. Cunningham (State Bar No.: 200413)
2  CONDON & FORSYTH LLP
   1901 Avenue of the Stars, Suite 850
3  Los Angeles, California 90067-6010
   Telephone: (310) 557-2030
4  Facsimile:  (310) 557-1299
   Email: fsilane@condonlaw.com
5  Email: scunningham@condonlaw.com

6     -and-

7  Marshall S. Turner (*pro hac vice*)
   CONDON & FORSYTH LLP
8  7 Times Square
   New York, NY 10036
9  Telephone: (212) 490-9100
   Facsimile: (212) 370-4453
10 Email: mturner@condonlaw.com

11 Attorneys for Plaintiff
   ALL NIPPON AIRWAYS COMPANY, LTD.
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15 ALL NIPPON AIRWAYS COMPANY, )   Case No. C07-03422 EDL
   LTD.,                       )
16              Plaintiff,      )   **ALL NIPPON AIRWAYS' BRIEF
                                )   IN OPPOSITION TO
17      vs.                     )   DEFENDANT'S MOTION TO
                                )   COMPEL AND FOR
18 UNITED AIR LINES, INC.,      )   PROTECTIVE ORDER**
                                )
19              Defendant.      )   **Hearing Date: November 13, 2007
                                )   Hearing Time: 9:00 a.m.**
20 _____)

21      Plaintiff, ALL NIPPON AIRWAYS COMPANY, LTD. (hereinafter referred

22 to as "ANA"), by and through its attorneys, Condon & Forsyth LLP, hereby

23 submits its brief in opposition to defendant UNITED AIR LINES, INC.'S

24 (hereinafter referred to as "UAL") Motion to Compel:

25 //

26 //

27 //

28
   _____
   ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
   DEFENDANT'S MOTION TO COMPEL AND FOR
   PROTECTIVE ORDER
   CASE NO.: C07-03422 EDL

1

# **TABLE OF CONTENTS**

2

INTRODUCTION ............................................................................2

3

ARGUMENT...................................................................................5

4   I.   GOOD CAUSE EXISTS AND JUSTICE REQUIRES THAT THE
         COURT DENY UAL'S MOTION TO COMPEL AND ISSUE A
5        PROTECTIVE ORDER PURSUANT TO RULE 26 OF THE
6        FEDERAL RULES OF CIVIL PROCEDURE TO PROHIBIT THE
         DEPOSITION OF AN ANA WITNESS CONCERNING THE
7        SGHA ...........................................................................5

8        A.   Good Cause Exists For A Protective Order Where, As Here,
9             UAL Seeks Discovery On A Document About Which No
10            Allegations Are Made In Its Answer or Counter-Complaint
              ...................................................................6

11

12       B.   Good Cause Exists For A Protective Order Where, As Here,
              The Discovery Sought Is Irrelevant.............................8

13

14       C.   Good Cause Exists For A Protective Order Where, As Here,
              UAL Has Improperly Noticed A Foreign Witness For
15            Deposition .......................................................12

16  II.   UAL'S MOTION FOR PROTECTIVE ORDER SHOULD BE
          DENIED ........................................................................15

17

18  CONCLUSION ............................................................20

19

20

21

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

Federal Statutes

Federal Rule of Civil Procedure 1............................................................13

Federal Rule of Civil Procedure 26 ..................................3, 5, 6, 13, 17, 20

Federal Rule of Civil Procedure 30 ..........................................................2

Federal Cases

*Armstrong Cork Co., v. Niagra Mohawk Power Corp.*, 16 F.R.D. 389, 390-91
(S.D.N.Y. 1954) ..............................................................................14

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)............6

*Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537 (D. Minn. 2003).................13

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)...........................................6

*In re Aircrash Disaster Near Cerritos, Cal., August 31, 1986*, 1989 WL 330820
(C.D.Cal. 1989)..............................................................................7

*In re Greenwood Air Crash*, 924 F. Supp. 1518, 1535 (S.D.Ind. 1995) .............7

*Mgmt. Activities, Inc. v. U.S.*, 21 F. Supp. 2d 1157 (C.D.Cal. 1998).................7

*Rodriquez v. U.S.*, 823 F.2d 735 (3d Cir. 1987)........................................7

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)...........................6, 13

*Six West Retail Acquisition, Inc. v. Sony Theatre Manag. Corp.*, 203 F.R.D. 98,
107 (S.D.N.Y. 2001)........................................................................13

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the
Southern District of Iowa*, 482 U.S. 522, 546, 107 S. Ct. 2542, 2557, 96 L. Ed. 2d
461,485(1987).................................................................................14

Other Authorities

ASIC GLOSSARY OF TERMS AND DEFINITIONS.............................................11

FAA Order 7110.65 - Air Traffic Control Manual §§ 2-1-2, 2-1-6,
2-1-21, 5-1-8 ...................................................................................7

NATO GLOSSARY OF TERMS AND DEFINITIONS............................................11

*Tactical Use and Abuse of Depositions under the Federal Rules*,
59 Yale L.J. 117 (1949) ....................................................................14

-ii-

1

## STATEMENT OF ISSUES TO BE DECIDED

2

3  I    WHETHER THIS COURT SHOULD DENY UNITED AIR LINES, INC.'S

4       MOTION TO COMPEL PRODUCTION OF THE PERSON MOST

5       KNOWLEDGEABLE AND FOR PROTECTIVE ORDER

6

7  II   WHETHER THIS COURT SHOULD ISSUE A PROTECTIVE ORDER

8       PROHIBITING THE DEPOSITION AND DOCUMENT PRODUCTION

9       BY AN ALL NIPPON AIRWAYS CO., LTD. EMPLOYEE

10      CONCERNING THE STANDARD GROUND HANDLING

11      AGREEMENT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-iii-

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

# **INTRODUCTION**

This action arises out of an accident involving ANA Flight NH007 and UAL Flight UA809 at San Francisco International Airport on October 7, 2003 ("the Accident").  A collision occurred between the two aircraft while ANA Flight NH007 was taxiing under its own power along the centerline of Taxiway A. During the taxi, Flight NH007's right wing collided with the right wing of UAL Flight UA809, which had been pushed back from its gate so that its wing intruded into the path of Flight NH007.

UAL alleges in its Counter-Complaint that ANA has breached the Standard Ground Handling Agreement (variously referred to herein as "SGHA" or "GHA") between the two airlines, "by refusing and/or failing to indemnify UAL for the damages that UAL's aircraft sustained in the collision complained of herein." Counter-Complaint, ¶ 27.  UAL further alleges that pursuant to the SGHA, any liability of UAL to ANA should be capped at $1.5 million.  Counter-Complaint, ¶ 35.  UAL attached a SGHA to its Counter-Complaint upon which it bases its allegations.

On September 12, 2007, UAL served ANA with deposition notices and document requests for the three ANA pilots on board Flight NH007 at the time of the Accident as well as a deposition notice for the "Person Most Knowledgeable" (hereinafter referred to as "PMK") concerning the SGHA pursuant to FRCP 30(b)(6).  Declaration of Marshall S. Turner ("Turner Decl."), Exhibit A.  ANA promptly informed UAL that no witness would be provided concerning the SGHA unless UAL were to provide some basis for requiring such a witness.  In its letter of August 30, 2007, ANA advised UAL that "it is clear on the face of the GHA referred to in and attached to United's Counter-Complaint that the GHA could not possibly have anything to do with any issue in this case," and that ANA has "no intention of bringing any ANA witness to the U.S. on this subject until United

-2-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   establishes some basis for this affirmative defense."  Turner Decl., Exhibit B.

2   Since the SGHA attached to UAL's Counter-Complaint, which is the basis of

3   UAL's allegations, is dated 1991 and on its face could not possibly apply to the

4   2003 Accident, ANA noted:

5           [I]f United is serious about asserting the GHA as an
6           affirmative defense, ANA would be entitled to ascertain
            the nature and basis of this claim before providing a
7           corporate witness to testify on the subject.  Please
            describe the nature and basis of this defense and how the
8           referenced document could possibly apply to any fact at
9           issue in this case.

10          Turner Decl., Exhibit B.

11
12  UAL offered no response.

13          The parties conducted a telephonic Rule 26(f) conference on September 10,

14  2007, during which UAL requested a deposition of a witness with knowledge of

15  the SGHA.  ANA again informed UAL that it would not agree to the production of

16  such a witness unless UAL could explain how the 1991 SGHA could possibly be

17  related to the 2003 Accident.  ANA again advised UAL in its letter of September

18  14, 2007:

19          [N]o such witness will be provided unless you can
            explain how the Ground Handling Agreement referred to
20          in and attached to your Counter-Complaint could have
21          any relevance to any issue in this case and why any
            question regarding this agreement cannot be answered
22          through interrogatories or admissions.

23          Turner Decl., Exhibit C.
24
25  UAL again provided no explanation in response to this request.  ANA has made

26  several attempts to discuss this issue with UAL, but UAL has failed to explain any

27  relevance between the 1991 SGHA and the 2003 Accident.

28  //                                              -3-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

UAL argues in its motion that ANA has denied it discovery without moving for a protective order. However, because it is so clear on its face that the 1991 SGHA could not possibly apply to this 2003 Accident, ANA saw no reason to waste this Court's time on a meaningless motion. Instead, in its letter of September 28, 2007, ANA:

1.  Pointed out to UAL its mistake in relying upon 1991 agreements; see ¶ 3;

2.  Provided UAL with copies of the SGHA that was in effect at the time of the Accident in 2003; see ¶ 3;

3.  Explained how the 2002 SGHA did not have any provision similar to the 1991 SGHA paragraph 6.7.2 that applied to "Aircraft moving under its own power" upon which UAL based Count Three and Count Four of its counterclaim; see ¶¶ 3, 4;

4.  Explained how the UAL's Ramp Controller's negligence related to the premature release of UAL 809 and not any service provided to ANA under the SGHA; see ¶ 8;

5.  Invited UAL to come forward with any information contrary to ANA's position; see ¶ 10; and

6.  Invited UAL to amend its Answer and Counter-Complaint to delete the Counts based upon the indisputably wrong SGHA.

See Turner Decl., Exhibit D.

UAL never responded to ANA's September 28, 2007 letter, nor has it sought to amend its Answer or Counter-Complaint to allege the SGHA in effect at the time of the Accident. Now that UAL has initiated the instant motion practice, ANA is constrained to seek a protective order to prevent the obvious annoyance and undue burden and expense of a deposition regarding a document that on its face does not apply to this Accident. Although UAL now admits that its pleadings

-4-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  were based upon an agreement that was not in effect at the time of the Accident, it

2  has recrafted its argument to abandon its pleadings that rely upon the term

3  "Moving aircraft under it own power" and relies upon an even more strained and

4  disingenuous interpretation of the word "Marshalling". Without providing any

5  legal or factual basis for its new position, UAL now argues that the Ramp

6  Controller provided "Marshalling" services under the SGHA. ANA respectfully

7  requests that UAL's Motion to Compel be denied and submits that good cause

8  exists for this Court to issue a protective order prohibiting the deposition of an

9  ANA witness with respect to the SGHA and denying UAL's document requests

10  attendant to its deposition notice pursuant to Rule 26 of the Federal Rules of Civil

11  Procedure.

**ARGUMENT**

**I**

**GOOD CAUSE EXISTS AND JUSTICE REQUIRES THAT THE COURT DENY UAL'S MOTION TO COMPEL AND ISSUE A PROTECTIVE ORDER PURSUANT TO RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE TO PROHIBIT THE DEPOSITION OF AN ANA WITNESS CONCERNING THE SGHA**

18  Since the allegations in UAL's Counter-Complaint are based upon a wrong

19  SGHA that has been superseded and does not have anything to do with this case,

20  UAL's motion should be denied and a protective order should be issued to prevent

21  the deposition of ANA's person most knowledgeable regarding the SGHA and

22  prohibit its attendant document requests. Even if UAL were to amend its Counter-

23  Complaint to allege the application of the SGHA in effect at the time of the

24  Accident, the deposition should not go forward because the express wording of the

25  SGHA does not support UAL's tenuous allegations. UAL has failed to provide

26  any factual or legal basis to support is position.

27  Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, that:

28  // _____ -5-

1  
2  
3  
4  

for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

5  
6  

   (1) that the disclosure or discovery not be had…  
   (4) that certain matters may not be inquired into…

7  FED. R. CIV. P. 26(C) (West 2007).

8    The United States Supreme Court has interpreted the language of Rule 26 as

9  conferring "broad discretion on the trial court to decide when a protective order is

10  appropriate and what degree of protection is required." *Seattle Times Co. v.*

11  *Rhinehart*, 467 U.S. 20, 36 (1984).

12    The party seeking a protective order has the burden of showing that "good

13  cause" for the order exists. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470,

14  476 (9th Cir. 1992). To establish good cause, the moving party must submit "a

15  particular and specific demonstration of fact, as distinguished from stereotyped and

16  conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (internal

17  quotation and citation omitted).

18    As set forth particularly and specifically by ANA below, ANA respectfully

19  submits that good cause exists and justice requires that this Court exercise its broad

20  discretion under Rule 26 and issue a protective order requiring that the deposition

21  and document production of an ANA witness with knowledge of the SGHA may

22  not be had and that this issue may not be inquired into unless UAL can establish at

23  least a modicum of relevance to the Accident.

24    **A. UAL Has Provided No Basis Upon Which To Grant Its Motion to**

25     **Compel And For Protective Order Where, As Here, UAL Seeks**

26     **Discovery On A Document About Which No Allegations Are Made**

   **In Its Answer or Counter-Complaint**

27  //

28  //         -6-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    UAL now seeks to compel production of a PMK with respect to a document

2 about which it has made no allegation. On this motion, UAL finally admits that

3 the 1991 SGHA and its Annexes attached to UAL's Answer and Counter-

4 Complaint are outdated and were not in effect at the time of the Accident. UAL

5 Motion, p. 7. UAL's Answer and Counter-Complaint contain no allegations with

6 respect to the 2002 SGHA[1] and its Annexes that were in effect at the time of the

7 Accident.

8    Additionally, UAL's argument that ANA's pleadings "accuse United of

9 negligence in providing services under the SGHA" is fallacious. A plain reading

10 of ANA's Complaint and ANA's Answer to UAL's Counter-Complaint reveals

11 that ANA has made no allegation that any service was being provided to ANA

12 under the SGHA at the time of the Accident, negligently or otherwise, and that

13 ANA has denied all such allegations by UAL. The allegations made by ANA with

14 respect to UAL's Ramp Controller were made regarding duties and obligations of

15 the Ramp Controller under the law and not in connection with any service provided

16 under the SGHA.

17    An air traffic controller's duties to pilots are defined by FAA Order 7110.65

18 – the Air Traffic Control Manual ("ATCM") – and common law. *In re Greenwood*

19 *Air Crash*, 924 F. Supp. 1518, 1535 (S.D.Ind. 1995). The duties delineated in the

20 allegations made by ANA in its Complaint with respect to UAL's Ramp Controller

21 are established by such law. *See* ATCM §§ 2-1-2, 2-1-6, 2-1-21, 5-1-8; *Mgmt.*

22 *Activities, Inc. v. U.S.*, 21 F. Supp. 2d 1157 (C.D.Cal. 1998); *Greenwood Air*

23 *Crash, supra*; *Rodriquez v. U.S.*, 823 F.2d 735 (3d Cir. 1987); *In re Aircrash*

24 *Disaster Near Cerritos, Cal., August 31, 1986*, 1989 WL 330820 (C.D.Cal. 1989).

25

26 _____

27 [1] The SGHA in effect at the time of the Accident became effective on September 25, 2002 pursuant to Annex B and adopted the 1998 IATA form Main Agreement and Annex A used by virtually all international airlines in the world ("2002 SGHA").

28 //    -7-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    In its letter of September 28, 2007, ANA requested that UAL:

2        withdraw all claims regarding the SGHA and file an
3        Amended Counter-Complaint that deletes COUNT
         THREE and COUNT FOUR in their entirety as well as
4        paragraph 4 of the Affirmative Defenses contained in
5        UAL's Answer and withdraw Exhibit 1.

6        Turner Decl., Exhibit D.

7    ANA received no response to this request. UAL states in its motion that it intends
8    to amend its pleadings to reflect its change in position with respect to the SGHA
9    and its Annexes. However, UAL has not done so to date. It is respectfully
10   submitted that UAL should not be permitted to seek discovery in connection with a
11   document about which no allegation has been made.

12   **B. UAL Has Provided No Basis Upon Which To Grant Its Motion to**
13   **Compel And For Protective Order Where, As Here, The Discovery**
14   **Sought Is Irrelevant**

15       UAL alleges that services were being provided to ANA under section 6.7.2
16   of Annex A to the SGHA. Counter-Complaint, ¶¶ 23, 31. Section 6.7.2 of Annex
17   A of the 1991 SGHA states, "Move aircraft under its own power in accordance
18   with the carrier's instructions." While this may have been a colorable argument,
19   UAL can no longer allege it since section 6.7.2 does not exist in the 2002 SGHA.
20   It is not a service described in the 1998 IATA form Annex A, nor is it referred to in
21   the services contracted for in the 2002 Annex B executed by ANA and UAL. Both
22   Counts Three and Four of UAL's Counter-Complaint are based on a section which
23   does not exist in the agreement which it now admits was in effect at the time of the
24   Accident. Since UAL cannot rely on section 6.7.2, it further strains UAL's
25   credulity by its attempt to rely on section 6.1.1 to fabricate a new argument that the
26   communications by its Ramp Controller somehow constitute "marshalling" when
27   no one in the aviation industry would agree with UAL's strained interpretation of

28   //

-8-

1  that term.

2      Even if the 2002 SGHA was attached to UAL's Answer and Counter-

3  Complaint and allegations about such agreement were made in UAL's pleadings,

4  such agreement would still be irrelevant to this matter.

5      No service was being provided by UAL to ANA under the 2002 SGHA at

6  the time of the Accident.  UAL refers to sections 4.2 and 4.3 of Annex B to the

7  SGHA to support its allegations.  Counter-Complaint, ¶¶ 24, 32.  Section 4.2 of

8  Annex B to the SGHA applies to, "any and all liabilities... in any manner arising

9  out of or in any way connected with the services furnished or to be furnished by

10  Handling Company under this Agreement."  Section 4.3 of Annex B to the SGHA

11  applies to, "any and all liabilities... in any manner arising out of or in any way

12  connected with goods or services furnished or to be furnished by Handling

13  Company under this Agreement."  As illustrated below, no service un der the

14  SGHA was being furnished by UAL to ANA at the time of the Accident.

15      UAL argues in its motion that services were being provided to ANA under

16  section 6.1.1 of Annex A to the SGHA.  Annex B sets forth the services to be

17  furnished under the SGHA.

18      The applicable Annex B, valid from September 25, 2002, states:

19      1.1   For a single ground handling consisting of the
20            arrival and subsequent departure at agreed timings
             of the same aircraft, the Handling Company shall
21            provide the following services of Annex A of the
             SGHA of April 1998:
22
       1.1.1  Section 6. Ramp
23                  6.1.1
                   6.2.1, 6.2.2 (on request), 6.2.3 (on request;
24                  additional charges apply)
                   6.3.1, 6.3.2(a)(b)
25                  6.5.1(a)(b)(c) (on request; additional
                   charges apply)
26                  6.6.1
                   6.7.1(a)(b)(c)(d)(e)
27

28  //

-9-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    However, none of the services listed under Section 6 of Annex A were being

2    provided to ANA at the time of the Accident nor were the damages "connected

3    with" or "arising out of" a service provided by UAL under the SGHA.  Section 6.1

4    of the applicable Annex A provides in its entirety:

5              6.1    Marshalling
              6.1.1  (a)    Provide
6                           or
7                    (b)    Arrange for
                     Marshalling at arrival or departure
8

9    Section 6.1.1 only provides for "Marshalling at arrival and or departure."

10   Without providing any legal or factual basis, UAL argues that the services

11   provided by UAL's Ramp Controller constitute marshalling.    However, the

12   services provided by UAL's Ramp Controller pursuant to Annex B of the

13   applicable SGHA are addressed in section 6.3 of the applicable Annex A; which

14   states:

15             6.3    Ramp to Flight Deck Communication
              6.3.1  Provide headsets.
16            6.3.2  Perform ramp to flight deck communication
17                   (a)    during tow-in and/or push-back.
                     (b)    during engine starting.
18

19   None of these services were being provided to ANA at the time of the Accident

20   since ANA had completed push-back and engine starting and was taxiing under its

21   own power long after UAL provided any service under the SGHA.

22   UAL argues that ANA has alleged that UAL's marshalling services were

23   negligent.  ANA has alleged that UAL's Ramp Controller's actions or omissions

24   were negligent because UAL's Ramp Controller released UAL's Flight UA809

25   prematurely so as to interfere with ANA's Flight NH007's taxi and a general

26   failure to fulfill the responsibilities of a FAA controller.  ANA has not alleged that

27   these actions or omissions in any way constituted or were connected to

28   //                                                    -10-

ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL AND FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone:  (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    "marshalling" services provided under the SGHA.  See Complaint, ¶¶ 33-52.

2         It is common knowledge in aviation that marshalling is a function of

3    someone on the ground, such as a wing walker or guide, guiding an aircraft with

4    visual signals, like those shown in the Federal Aviation Administration ("FAA")

5    Aeronautical Information Manual Section 4-3-25.  See Turner Decl., Exhibit E.

6    For UAL's counsel to argue otherwise or that any function of UAL's Ramp

7    Controller constituted marshalling is disingenuous.    The Air and Space

8    Interoperability Council, an international organization working in conjunction with

9    its member nations' respective air forces, defines "aircraft marshalling" as, "The

10   directing by visual or other signaling of the taxiing of aircraft into predesignated

11   positions.  Also called aircraft parking."  ASIC GLOSSARY OF TERMS AND

12   DEFINITIONS.    See Turner Decl., Exhibit F.    The North Atlantic Treaty

13   Organization defines "aircraft marshaller" as, "A person trained to direct by visual

14   or other means the movement of aircraft on the ground into and out of landing,

15   parking or hovering points."  It also notes that this definition applies to the term

16   "aircraft guide."  NATO GLOSSARY OF TERMS AND DEFINITIONS.  See Turner Decl.,

17   Exhibit G.    This coincides directly with UAL's training manual for

18   "guidepersons."    See "Ramp Services Trainer Aircraft Guideperson &

19   Wingwalker," Turner Decl., Exhibit H.  UAL's training manual shows the hand

20   signals and wand positions to be used when guiding aircraft on the ground.    UAL

21   has provided no rule or definition by any aviation organization to the contrary.

22         Furthermore, UAL's Ramp Controller was performing FAA functions with

23   respect to communications with inbound and outbound aircraft, not services

24   provided under the SGHA.  Pursuant to agreements, unrelated to any SGHA, these

25   FAA functions were delegated to UAL.  In an agreement between the FAA and

26   San Francisco Terminal Equipment Co. ("SFOTEC"), the FAA delegated

27   responsibility for the operation of Ramp Tower G to SFOTEC.  See Turner Decl.,

28   //                                                    -11-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    Exhibit I.  In an agreement between SFOTEC and UAL, SFOTEC transferred such

2    responsibility to UAL.   See Turner Decl., Exhibit J.   It is clear under these

3    agreements, which delineate duties in connection with the operation of Ramp

4    Tower G and establish procedure for arriving and departing aircraft, that the Ramp

5    Controller services were provided to all airlines regardless of whether there was an

6    SGHA in place, including UAL's rival American Airlines whose planes operated

7    out of that area.   In accordance with these agreements, the Ramp Controller

8    operating in Ramp Tower G at the time of the Accident was a UAL employee who

9    was performing FAA functions which had been delegated first to SFOTEC and

10   then to UAL.

11        UAL's argument that services provided by its Ramp Controller constituted

12   marshalling disregards the SGHA and the agreements between the FAA, SFOTEC,

13   and UAL.  The functions delineated in the FAA agreement with SFOTEC and the

14   SFOTEC agreement with UAL to operate the Ramp Tower G clearly do not

15   involve marshalling.  UAL has extracted a few selective words from a Webster's

16   dictionary, but has offered no factual or legal support for its contrived definition of

17   marshalling.  UAL has provided no affidavit from its Ramp Controller or anyone

18   from UAL suggesting that the Ramp Controller was providing "marshalling" or

19   any other service under the SGHA.

20        No marshalling of Flight NH007 was taking place at the time of the

21   collision, which was taxiing under its own power pursuant to clearances from UAL

22   Ramp Control and the FAA controller in the FAA Air Traffic Control Tower.

23   There was no one on the ground guiding NH007.  Accordingly, no service was

24   being provided to ANA under section 6.1 of the SGHA at the time of the Accident.

25   **C. Good Cause Exists For A Protective Order Where, As Here, UAL
26      Has Improperly Noticed A Foreign Witness For Deposition**

27        UAL's deposition notice states that the location of the deposition is Los

28   //                                            -12-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

Angeles. Although ANA has volunteered to produce its flight crew for depositions in California, the proper place for the deposition of a corporate employee is at the employee's place of business or residence in Japan. *Six West Retail Acquisition, Inc. v. Sony Theatre Manag. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001); *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537 (D. Minn. 2003).

Furthermore, ANA respectfully submits that pursuant to Federal Rules of Civil Procedure Rule 1 and Rule 26, justice requires that the Court issue an order protecting ANA and its corporate employees from annoyance, embarrassment, oppression and undue burden. Rule 26 provides that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" FED. R. CIV. PROC. 26 (West 2007).

Rule 1 requires that the Federal Rules of Civil Procedure, including Rule 26, should be "construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1 (West 2007). Thus, the Advisory Committee observed that courts have an "affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." Advisory Committee Notes Rule 1, 1993 Amendment.

Within this framework, the United States Supreme Court instructed in *Seattle Times Co. v. Rhinehart* that:

> Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 28, 81 L. Ed.2d 17, 104 S. Ct. 2199 (1984).

Although the federal discovery rules are very liberal, one federal district

ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL AND FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

1    court has stated that:

2           [t]he court should be alert to see that the liberal deposition
3           procedure provided in the Federal Rules is used only for
            the purpose for which it is intended and is not used as a
4           litigation tactic to harass the other side or cause it
            wasteful expense.
5

6    *Armstrong Cork Co., v. Niagra Mohawk Power Corp.*, 16 F.R.D. 389, 390-91

7    (S.D.N.Y. 1954), *citing, Tactical Use and Abuse of Depositions under the Federal*

8    *Rules*, 59 Yale L.J. 117 (1949).

9           The United States Supreme Court, in *Societe Nationale Industrielle*

10   *Aerospatiale v. United States District Court for the Southern District of Iowa*,

11   considered the potential for abuse of the liberal discovery procedures implemented

12   by the courts in the United States where foreign litigants are involved.    The

13   Supreme Court held that:

14          American courts, in supervising pretrial proceedings,
15          should exercise special vigilance to protect foreign
            litigants from the danger that unnecessary, or unduly
16          burdensome, discovery may place them in a
            disadvantageous position. Judicial supervision of
17          discovery should always seek to minimize its costs and
18          inconvenience and to prevent improper uses of discovery
            requests. When it is necessary to seek evidence abroad,
19          however, the district court must supervise pretrial
            proceedings particularly closely to prevent discovery
20          abuses. For example, the additional cost of transportation
21          of documents or witnesses to or from foreign locations
            may increase the danger that discovery may be sought for
22          the improper purpose of motivating settlement, rather
            than finding relevant and probative evidence. Objections
23          to "abusive" discovery that foreign litigants advance
24          should therefore receive the most careful consideration.
25

26   *Societe Nationale Industrielle Aerospatiale v. United States District Court for the*

27   *Southern District of Iowa*, 482 U.S. 522, 546, 107 S. Ct. 2542, 2557, 96 L. Ed. 2d

28   //_____-14-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

461,485(1987).

Since ANA is organized and exists under the laws of Japan with its principle place of business in Japan and the corporate employee who signed the SGHA resides in Japan and executed the SGHA in Japan, if a witness is to be produced on the subject of the SGHA, the appropriate place for such a deposition is in Japan.

## II

## UAL'S MOTION FOR PROTECTIVE ORDER SHOULD BE DENIED

UAL argues in its motion, "ANA… has refused to cooperate and stipulate to the proposed Protective Order." This argument is spurious. ANA has attempted in good faith to negotiate acceptable and reasonable terms to the proposed Protective Order Regarding Confidential Information. UAL broke off such negotiations before any final agreement could be reached.

ANA first received UAL's proposed Protective Order with UAL's letter dated October 2, 2007. On October 5, 2007, ANA returned the proposed Protective Order to UAL with ANA's suggested changes. Turner Decl., Exhibit K. UAL in turn commented on ANA's suggested changes in its letter dated October 8, 2007. Turner Decl., Exhibit L. ANA promptly responded to UAL with further comments on October 8, 2007. Turner Decl., Exhibit M. ANA received no response to this good faith effort to resolve this issue. ANA heard nothing further on the matter until receipt of UAL's motion.

In sections I.B, I.C, and I.D of UAL's proposed Protective Order, UAL uses the wording, "Confidential Material… and any information derived therefrom." ANA suggested deletion of this wording in its suggested changes of October 5, 2007 and explained in its comments of October 8, 2007:

**II. B.**: I cannot accept your suggestion that ". . . any

-15-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL AND FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

information derived therefrom, will be deemed confidential. . . ." If Confidential Material is derived from Confidential Material, you can designate such material as "Confidential Material". There is no reason to assume or "deem" that all information derived from Confidential Material will be Confidential Material. If you designate such material as Confidential Material, it would be our obligation to treat it as such until it is de-designated. I cannot accept all such information as being "deemed confidential". The designating party's counsel must make a good faith determination that the information warrants protection. The same goes for 1C and 1D.

Turner Decl., Exhibit M.

UAL argues that this wording should remain in place and offers one potential "scenario" involving expert opinions to support this argument. However, this wording renders the Protective Order overly inclusive. If UAL desires that particular information "derived" from Confidential Material also be treated as Confidential, then UAL can so designate such material on a document by document basis.

As stated in the Court's Standing Order on Confidential and Sealed Documents, "[t]he burden of establishing confidentiality shall be on the designating party." Accordingly, it would be the producing party's burden to designate any document as confidential, whether gleaned from Confidential Material or not. Such sweeping wording automatically renders documents confidential that are not necessarily so and that have not gone through the delineated designation process. This will only serve to create additional disputes regarding designation and de-designation and place an additional burden on the Court and the parties. Accordingly, all such language should be eliminated from the Protective Order.

//                                                          -16-

The second paragraph of section IV of UAL's proposed Protective Order would allow third parties to designate documents as confidential. ANA recommended that this provision be deleted, but UAL argues for its inclusion. ANA maintains that this provision should be deleted for the reasons made clear in its letter of October 8, 2007:

> What your second paragraph seems to suggest, is that this Order would allow any unknown third party to designate whatever it feels like designating as Confidential Material. If some third party is producing what it considers to be Confidential Material, it should raise the subject and we and the Court should decide whether such material warrants protection. I also do not understand how a third party could possibly comply with the requirement that the designating party's counsel shall make a good faith determination.

> Turner Decl., Exhibit M.

Third parties should not be given the power to designate documents as confidential. Doing so would contravene this Court's Standing Order on Confidential and Sealed Documents and the purpose of the Protective Order.

This Court's Standing Order mandates:

> Before designating any specific information "Confidential" or "Confidential – Attorney's Eyes Only," the designating party's counsel shall make a good faith determination that the information warrants protection under Rule 26(c) of the Federal Rules of Civil Procedure. The burden of establishing confidentiality shall be on the designating party. (emphasis added).

Pursuant to this Court's Standing Order, it is the burden of the parties to this litigation and their counsel to determine confidentiality. Allowing third parties to do so goes against this mandate. Furthermore, third parties are not signatories to the Protective Order, are not bound by its terms, and are not likely to be subject to

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-17-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

the jurisdiction of this Court. Providing designation authority to third parties undermines the purpose and power of the Protective Order. As suggested by ANA, if a third party is concerned about a specific document, the issue can be raised with the Court and the parties for resolution. Accordingly, the second paragraph of Section IV of UAL's proposed Protective Order should be deleted.

The same arguments apply to Section IX.B of UAL's proposed Protective Order. As stated in ANA's letter of October 8, 2007:

> If a party has designated Confidential Material that it gives to its experts, such material remains Confidential Material and must be treated as Confidential. It is not up to the expert to designate material as confidential. Moreover, it would appear impossible for an expert to fulfill Judge Laporte's Standing Order requirement that "a designating party's counsel shall make a good faith determination that the information warrants protection."

> Turner Decl., Exhibit M.

While UAL argues in its motion that this provision "permits the 'designating party,' not the third party, to designate this information as confidential," the ambiguous terms of this section could allow a third party to be considered a "designating party." If UAL cannot make the terms of this provision unambiguous, then it should be deleted.

Section XI of UAL's proposed Protective Order states:

> The parties hereto agree and acknowledge that a material and willful violation of this Order by any party, their employees, representatives or agents or any third-party who executes the agreement set forth in Section II.D, will result in irreparable harm to the producing party and the parties therefore consent to the issuance of an injunction and other appropriate relief. Nothing in this Order shall preclude a party from pursuing an action for damages on based on the violation of the terms of this Order.

-18-

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

UAL concedes in its motion that Section XI of its proposed Protective Order "automatically entitles the aggrieved party to injunctive relief and other damages." Such wording is obviously overly inclusive. Such relief should only be granted when there is such a determination by the Court. Additionally, there is no sound basis for categorizing all purported violations of the Protective Order as "irreparable harm."

ANA suggested the following change to the wording of Section XI:

> The parties hereto agree and acknowledge that a material and willful violation of this Order by any party, their employees, representatives or agents or any third-party who executes the agreement set forth in Section II.D, will be <u>subject to</u> the issuance of an injunction and other appropriate relief <u>as may be determined by the Court</u>. Nothing in this Order shall preclude a party from pursuing an action for damages based on the violation of the terms of this Order. (emphasis added).

Turner Decl., Exhibit K.

ANA stated in its comments of October 8, 2007:

> <u>XI</u>:    As I have reworded Section XI, any party would be free to seek injunctive relief, along with all other permissible relief, as may be determined by the Court. There is no reason for a predetermination that "irreparable harm" will be caused. If an aggrieved party can prove irreparable harm to the Court, nothing in this Order would prevent such party from seeking all remedies, including injunctive relief. I could not possibly agree in advance that a violation of the Order will automatically result in "irreparable harm".

Turner Decl., Exhibit M.

ANA's suggested wording adequately protects the parties against violations of the

-19-

1   Protective Order and provides remedies for any harm resulting therefrom.  It is

2   unreasonable to automatically designate all violations as resulting in "irreparable

3   harm" prior to the occurrence of any violation.  Such determinations should be

4   made by the Court at its discretion on a case by case basis.  Accordingly, ANA's

5   suggested wording for Section XI should be inserted in the proposed Protective

6   Order.

7                                **CONCLUSION**

8          In light of the foregoing, ANA respectfully submits that UAL's Motion To

9   Compel and For Protective Order should be denied.  ANA further respectfully

10  submits that it has particularly and specifically shown that good cause exists and

11  justice requires that this Court exercise its broad discretion under Rule 26 and

12  issue a protective order prohibiting the deposition of and production of documents

13  by a representative of ANA with respect to the SGHA and its Annexes.

14  Dated: October 23, 2007            CONDON & FORSYTH LLP

15

16                                 By:/s/  Marshall S. Turner
                                       FRANK A. SILANE
17                                     SCOTT D. CUNNINGHAM
                                       MARSHALL S. TURNER (*pro hac vice*)
18
                                       Attorneys for Plaintiff
19                                     ALL NIPPON AIRWAYS COMPANY, LTD.

20

21

22

23

24

25

26

27

28  //                                             -20-
    ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
    DEFENDANT'S MOTION TO COMPEL AND FOR
    PROTECTIVE ORDER
    CASE NO.: C07-03422 EDL

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1

### CERTIFICATE OF SERVICE

2    ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL AND FOR PROTECTIVE ORDER

3

4    I, hereby certify that on October 23, 2007 I electronically filed the foregoing

5    paper with the Clerk of the Court using the ECF System which will send

6    notification of such filing to the following:

7

| | |
|---|---|
| Scott R. Torpey, Esq.<br>Jaffe, Raitt, Heuer & Weiss<br>2777 Franklin Road, Suite 2500<br>Southfield, MI 48034-8214<br>Phone: (248) 727-1461<br>Fax: (248) 351-3082 | Attorneys for defendant |
| Jeffrey A. Worthe, Esq.<br>Worthe, Hanson & Worthe<br>The Xerox Centre<br>1851 East First Street, Ninth Floor<br>Santa Ana, CA 92705 | Attorneys for defendant |

HEATHER L. JACKSON

Sworn to before me this
23rd day of October, 2007

Notary Public

Timothy H Eskridge
Notary Public State of N.Y.
02ES6121835
Qualified in New York County
Commission Expires January 31 20

-21-

ALL NIPPON AIRWAYS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL AND FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL