1  Scott D. Cunningham (State Bar No.: 200413)
   CONDON & FORSYTH LLP
2  1901 Avenue of the Stars, Suite 850
   Los Angeles, California 90067-6010
3  Telephone: (310) 557-2030
   Facsimile:  (310) 557-1299
4  Email: scunningham@condonlaw.com

5     -and-

6  Marshall S. Turner (*pro hac vice*)
   CONDON & FORSYTH LLP
7  7 Times Square
   New York, NY 10036
8  Telephone: (212) 490-9100
   Facsimile: (212) 370-4453
9  Email: mturner@condonlaw.com

10 Attorneys for Plaintiff and Counter-Defendant
   ALL NIPPON AIRWAYS COMPANY, LTD.

11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14 ALL NIPPON AIRWAYS COMPANY, )   Case No. C07-03422 EDL
   LTD.,                       )
15              Plaintiff,      )   **ALL NIPPON AIRWAYS
                               )   COMPANY, LTD.'S NOTICE OF
16     vs.                     )   MOTION FOR PROTECTIVE
                               )   ORDER**
17 UNITED AIR LINES, INC.,     )
                               )   **Hearing Date: December 18, 2007**
18              Defendant.      )   **Hearing Time: 9:00 a.m.**
                               )   **Hearing Place: Courtroom of Hon.**
19 _____)   **Elizabeth D. Laporte**
   AND RELATED COUNTER-CLAIM
20

21      Plaintiff and Counter-Defendant, ALL NIPPON AIRWAYS COMPANY,

22 LTD. (hereinafter referred to as "ANA"), by and through its attorneys, Condon &

23 Forsyth LLP, hereby gives notice that the instant Motion for Protective Order will

24 come for hearing in the courtroom of the Honorable Elizabeth D. Laporte on

25 December 18, 2007 at 9 a.m.

26      Plaintiff ANA hereby moves this Court to exercise its broad discretion under

27 Rule 26 to issue a protective order: (1) ordering that the deposition of a

28 representative of ANA with respect to the Standard Ground Handling Agreement

1    not be had; or, alternatively, (2) ordering that the deposition of the representative

2    of ANA with respect to the Standard Ground Handling Agreement must be held in

3    Japan.

4        The Motion will be based upon this Notice of Motion, the Memorandum of

5    Points and Authorities, the Declaration of Marshall S. Turner, all papers on file

6    herein, and any oral argument offered at the hearing.

7    Dated: November 9, 2007        CONDON & FORSYTH LLP

8

9                    By: _____

10                   MARSHALL S. TURNER (*pro hac vice*)
                     SCOTT D. CUNNINGHAM

11

12                   Attorneys for Plaintiff
                     ALL NIPPON AIRWAYS COMPANY, LTD.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

ALL NIPPON AIRWAYS COMPANY, LTD.'S NOTICE OF
MOTION FOR PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

ARGUMENT.....................................................................................5

    I.     GOOD CAUSE EXISTS AND JUSTICE REQUIRES THAT THE COURT ISSUE A PROTECTIVE ORDER PURSUANT TO RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE THAT THE DEPOSITION MAY NOT BE HAD FROM AN ANA WITNESS CONCERNING THE SGHA...............................…..…..5

        A.    Good Cause Exists For A Protective Order Where, As Here, The Discovery Sought Is Irrelevant…………………………..6

        B.    Good Cause Exists For A Protective Order Where, As Here, A Witness Who Resides And Works In A Foreign Jurisdiction Has Been Noticed For Deposition In The Forum State……...13

CONCLUSION .................................................................……...............17

1

## TABLE OF AUTHORITIES

2

Federal Statutes

Federal Rule of Civil Procedure 1.................................................14, 15

Federal Rule of Civil Procedure 15 ......................................................4

Federal Rule of Civil Procedure 26 ...................................3, 5, 6, 14, 15, 17

Federal Rule of Civil Procedure 30 ......................................................2

Federal Rule of Civil Procedure 37 ......................................................5

Local Rules

Federal Rule of Civil Procedure 37-1 ....................................................5

Federal Cases

*Armstrong Cork Co., v. Niagra Mohawk Power Corp.*, 16 F.R.D. 389 (S.D.N.Y. 1954) ...................................................................15

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992).................6

*Chris-Craft Indus. Products, Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605 (N.D. Ill. 1999).......................................................................14

*Coyle v. P.T. Garuda Indonesia*, 363 F. 3d 979 (9th Cir. 2004).......................9

*Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537 (D. Minn. 2003)..................14

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)........................................6

*In re Aircrash Disaster Near Cerritos, Cal., August 31, 1986*, 1989 WL 330820 (C.D.Cal. 1989)...............................................................12, 13

*In re Greenwood Air Crash*, 924 F. Supp. 1518 (S.D.Ind. 1995) ...................12

*Mgmt. Activities, Inc. v. U.S.*, 21 F. Supp. 2d 1157 (C.D.Cal. 1998)................12

*Rodriquez v. U.S.*, 823 F.2d 735 (3d Cir. 1987)......................................12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)...............................6, 15

*Six West Retail Acquisition, Inc. v. Sony Theatre Manag. Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001).....................................................................14

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987).........................................................................15, 16

-ii-

*Thomas v. Int'l Bus. Machines*, 48 F.3d 478 (10th Cir. 1995)..........................14

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998)...11

Other Authorities

ASIC GLOSSARY OF TERMS AND DEFINITIONS...................................................8

FAA Order 7110.65 - Air Traffic Control Manual §§ 2-1-2, 2-1-6,
2-1-21, 5-1-8 ...................................................................................12

NATO GLOSSARY OF TERMS AND DEFINITIONS....................................................9

*Tactical Use and Abuse of Depositions under the Federal Rules*,
59 Yale L.J. 117 (1949) ........................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-iii-

1

## STATEMENT OF ISSUES TO BE DECIDED

2

3  I  WHETHER THIS COURT SHOULD ISSUE A PROTECTIVE ORDER
4  PROHIBITING THE DEPOSITION OF AN ALL NIPPON AIRWAYS
5  CO., LTD. EMPLOYEE CONCERNING THE STANDARD GROUND
6  HANDLING AGREEMENT BECAUSE THE AGREEMENT IS NOT
7  RELEVANT TO THIS CASE

8

9  II  WHETHER THIS COURT SHOULD ISSUE A PROTECTIVE ORDER
10  DIRECTING THAT THE DEPOSITION OF AN ALL NIPPON AIRWAYS
11  CO., LTD. EMPLOYEE CONCERNING THE STANDARD GROUND
12  HANDLING AGREEMENT TAKE PLACE WHERE THE WITNESS
13  RESIDES AND IS EMPLOYED

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

ALL NIPPON AIRWAYS COMPANY, LTD.'S MOTION FOR
PROTECTIVE ORDER
CASE NO.: C 07 3422 EDL

1  Scott D. Cunningham (State Bar No.: 200413)
   CONDON & FORSYTH LLP
2  1901 Avenue of the Stars, Suite 850
   Los Angeles, California 90067-6010
3  Telephone: (310) 557-2030
   Facsimile:  (310) 557-1299
4  Email: scunningham@condonlaw.com

5     -and-

6  Marshall S. Turner (*pro hac vice*)
   CONDON & FORSYTH LLP
7  7 Times Square
   New York, NY 10036
8  Telephone: (212) 490-9100
   Facsimile: (212) 370-4453
9  Email: mturner@condonlaw.com

10 Attorneys for Plaintiff and Counter-Defendant
   ALL NIPPON AIRWAYS COMPANY, LTD.
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14 ALL NIPPON AIRWAYS COMPANY,)  Case No. C07-03422 EDL
   LTD.,                       )
15            Plaintiff,        )  **MOTION FOR PROTECTIVE**
                                )  **ORDER**
16      vs.                     )
                                )  **Hearing Date: December 18, 2007**
17 UNITED AIR LINES, INC.,      )  **Hearing Time: 9:00 a.m.**
                                )  **Hearing Place: Courtroom of Hon.**
18            Defendant.        )  **Elizabeth D. Laporte**
                                )
19 _____)
                                
20 AND RELATED COUNTER-CLAIM

21        Plaintiff and Counter-Defendant, ALL NIPPON AIRWAYS COMPANY,

22 LTD. (hereinafter referred to as "ANA"), by and through its attorneys, Condon &

23 Forsyth LLP, hereby submits its Motion for Protective Order as follows:

24                        **INTRODUCTION**

25        ANA is seeking a Protective Order to prohibit the taking of a deposition of

26 ANA's "Person Most Knowledgeable" (hereinafter referred to as "PMK") with

27 regard to a certain agreement between ANA and Defendant United Air Lines, Inc.

28 (hereinafter referred to as "UAL"), because it is clear on the face of the agreement

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone:  (310) 557-2030

1   that the agreement has no relevance to any issue in this case.

2       This action arises out of an accident involving ANA Flight NH007 and UAL
3   Flight UA809 at San Francisco International Airport on October 7, 2003 ("the
4   Accident").   A collision occurred between the two aircraft while ANA Flight
5   NH007 was taxiing under its own power along the centerline of Taxiway A.
6   During the taxi, ANA Flight NH007's right wing collided with the right wing of
7   UAL Flight UA809, which had been pushed back from its gate so that its wing
8   intruded into the path of Flight ANA NH007.

9       UAL alleges in its Counter-Complaint that ANA has breached the Standard
10  Ground Handling Agreement (variously referred to herein as "SGHA" or "GHA")
11  between the two airlines, "by refusing and/or failing to indemnify UAL for the
12  damages that UAL's aircraft sustained in the collision complained of herein."
13  Counter-Complaint, ¶ 27; First Amended Counter-Complaint, ¶ 27.  UAL further
14  alleges that pursuant to the SGHA, any liability of UAL to ANA should be capped
15  at $1.5 million.  Counter-Complaint, ¶ 27; First Amended Counter-Complaint, ¶
16  35.  UAL attached three documents (3) to its Counter-Complaint upon which it
17  bases its allegations.  The Main Agreement and Annex A were signed by UAL on
18  July 23, 1991 and by ANA on August 14, 1991; and Annex B is dated September
19  25, 2001 (collectively referred to herein as the "1991 SGHA").

20      On September 27, 2007, UAL served ANA with deposition notices and
21  document requests for the three ANA pilots on board Flight NH007 at the time of
22  the Accident as well as a deposition notice for the PMK concerning the 1991
23  SGHA pursuant to FRCP 30(b)(6).  Declaration of Marshall S. Turner ("Turner
24  Decl."), Exhibit A.  ANA promptly informed UAL that no witness would be
25  provided concerning the SGHA unless UAL were to provide some basis for
26  requiring such a witness.

27      In its letter of August 30, 2007, ANA advised UAL that "it is clear on the

-2-

face of the GHA referred to in and attached to United's Counter-Complaint [the 1991 SGHA] that the GHA could not possibly have anything to do with any issue in this case," and that ANA has "no intention of bringing any ANA witness to the U.S. on this subject until United establishes some basis for this affirmative defense." Turner Decl., Exhibit B. ANA noted:

> [I]f United is serious about asserting the GHA as an affirmative defense, ANA would be entitled to ascertain the nature and basis of this claim before providing a corporate witness to testify on the subject. Please describe the nature and basis of this defense and how the referenced document could possibly apply to any fact at issue in this case.

Turner Decl., Exhibit B.

UAL offered no response.

The parties conducted a telephonic Rule 26(f) conference on September 10, 2007, during which UAL requested a deposition of a witness with knowledge of the SGHA. ANA again informed UAL that it would not agree to the production of such a witness unless UAL could explain how the 1991 SGHA could possibly be related to the Accident. ANA again advised UAL in its letter of September 14, 2007:

> [N]o such witness will be provided unless you can explain how the Ground Handling Agreement referred to in and attached to your Counter-Complaint could have any relevance to any issue in this case and why any question regarding this agreement cannot be answered through interrogatories or admissions.

Turner Decl., Exhibit C.

UAL again provided no explanation in response to this request.

In its letter of September 28, 2007, ANA:

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-3-

1. Provided UAL with copies of the agreements that were in effect on the date of the Accident (collectively referred to herein as the "2002 SGHA") ; see Turner Decl., Exhibit D, ¶ 3;

2. Explained how ANA's claim was against UAL's Ramp Controller for his negligence related to the premature release of UAL 809 and was not related to any service provided to ANA under the SGHA; see Turner Decl., Exhibit D, ¶ 8;

3. Invited UAL to come forward with any information contrary to ANA's position; see Turner Decl., Exhibit D, ¶ 10; and

4. Invited UAL to amend its Answer and Counter-Complaint to delete Counts Three and Four; see Turner Decl., Exhibit D, ¶ 10.

See Turner Decl., Exhibit D.

UAL provided no response. UAL filed a motion to compel production of the PMK in which UAL concedes that the 1991 SGHA attached to its Counter-Complaint was not in effect at the time of the Accident. UAL subsequently filed a First Amended Counter-Complaint wherein it does not delete Counts Three and Four, but rather bases its allegations concerning the SGHA on different agreements than those attached to its Counter-Complaint. In its First Amended Counter-Complaint, UAL bases its claims on the 2002 SGHA provided by ANA that was in effect at the time of the Accident. However, UAL did not move for leave to file its amended pleading. Despite UAL's assertion in its motion to compel that the Court agreed to "permit" the filing, there is no order or ruling to support UAL's position. At the Initial Case Management Conference on October 2, 2007, counsel for ANA informed the Court he had invited UAL to withdraw the 1991 SGHA documents attached to its Counter-Complaint and to withdraw Counts Three and Four of its Counter-Complaint, but ANA has never consented to any amendment as claimed by UAL nor had the Court agreed. Pursuant to FRCP Rule 15, a party may amend its pleading "only by leave of court or by written consent of the adverse party."

-4-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  UAL has secured neither. This Court's Case Management And Pretrial Order For

2  Jury Trial dated October 18, 2007 mandates that, "[t]he last day to file a motion, or

3  stipulation and proposed order, to join other parties, or amend the pleadings shall

4  be October 31, 2007." UAL failed to adhere to this mandate when it filed its First

5  Amended Complaint without a motion or stipulation.

6  Pursuant to FRCP 37 and L.R. 37-1, ANA made a good faith attempt to

7  confer with UAL to resolve this issue without court action. In its letter of

8  November 8, 2007, ANA requested that UAL have a good faith conference to

9  discuss the same. See Turner Decl., Exhibit E. On November 9, 2007, ANA and

10 UAL conducted a teleconference during which UAL refused to withdraw its

11 request for a deposition of a representative of ANA with respect to the SGHA.

12 Unfortunately, the dispute remains unresolved and ANA has filed this

13 motion to seek the assistance of the Court. ANA respectfully submits that good

14 cause exists for this Court to issue a protective order prohibiting the deposition of

15 an ANA witness with respect to the SGHA pursuant to Rule 26 of the Federal

16 Rules of Civil Procedure.

17                          **ARGUMENT**

18                              **I**

19 **GOOD CAUSE EXISTS AND JUSTICE REQUIRES THAT THE COURT**
   **ISSUE A PROTECTIVE ORDER PURSUANT TO RULE 26 OF THE**
20 **FEDERAL RULES OF CIVIL PROCEDURE THAT THE DEPOSITION**
   **MAY NOT BE HAD FROM AN ANA WITNESS CONCERNING THE**
21                            **SGHA**

22

23 A protective order should be issued to prevent the deposition of ANA's

24 PMK regarding the SGHA. The express wording of the SGHA does not support

25 UAL's tenuous allegations.

26 Rule 26 of the Federal Rules of Civil Procedure states, in pertinent part, that:

27              for good cause shown, the court in which the action is
                pending . . . may make any order which justice requires to
28              protect a party or person from annoyance, embarrassment,

                                    -5-

ALL NIPPON AIRWAYS COMPANY, LTD.'S MOTION FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had…
(4) that certain matters may not be inquired into…

FED. R. CIV. P. 26(C) (West 2007).

The United States Supreme Court has interpreted the language of Rule 26 as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The party seeking a protective order has the burden of showing that "good cause" for the order exists. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). To establish good cause, the moving party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (internal quotation and citation omitted).

As set forth particularly and specifically by ANA below, ANA respectfully submits that good cause exists and justice requires that this Court exercise its broad discretion under Rule 26 and issue a protective order requiring that the deposition of an ANA witness with knowledge of the SGHA may not be had and that this issue may not be inquired into unless UAL can establish at least a modicum of relevance to the Accident.

## A. Good Cause Exists For A Protective Order Where, As Here, The Discovery Sought Is Irrelevant

Clearly, the 1991 SGHA upon which UAL based its Counter-Complaint and its deposition notice cannot possibly have any relevance to this 2003 Accident and ANA should not be required to produce a PMK regarding such documents.

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-6-

Additionally, no service was being provided by UAL to ANA under the 2002 SGHA at the time of the Accident.  UAL refers to sections 4.2 and 4.3 of Annex B to the 2002 SGHA to support its allegations.  First Amended Counter-Complaint, ¶¶ 24, 32.  Section 4.2 of Annex B to the 2002 SGHA applies to, "any and all liabilities… in any manner arising out of or in any way connected with the services furnished or to be furnished by Handling Company under this Agreement."  Section 4.3 of Annex B to the 2002 SGHA applies to, "any and all liabilities… in any manner arising out of or in any way connected with goods or services furnished or to be furnished by Handling Company under this Agreement."  As illustrated below, no service under the 2002 SGHA was being furnished by UAL to ANA at the time of the Accident.

UAL also alleges that services were being provided to ANA under section 6.1.1 of Annex A to the 2002 SGHA.  First Amended Counter-Complaint, ¶¶ 23, 26, 31, 33.  Annex B sets forth the services to be furnished under the 2002 SGHA.

The applicable Annex B, valid from September 25, 2002, states:

> 1.1    For a single ground handling consisting of the arrival and subsequent departure at agreed timings of the same aircraft, the Handling Company [UAL] shall provide the following services of Annex A of the SGHA of April 1998:
>
> 1.1.1  Section 6. Ramp
> > 6.1.1
> > 6.2.1, 6.2.2 (on request), 6.2.3 (on request; additional charges apply)
> > 6.3.1, 6.3.2(a)(b)
> > 6.5.1(a)(b)(c)  (on  request;  additional charges apply)
> > 6.6.1
> > 6.7.1(a)(b)(c)(d)(e)

To see what these services are, it is necessary to refer to Annex A, Section 6.  However, none of the services listed under Section 6 of Annex A were being provided to ANA at the time of the Accident nor were the damages "connected with" or "arising out of" a service provided by UAL under the 2002 SGHA

-7-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1911 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  pursuant to Sections 4.2 and 4.3 of the 2002 SGHA.  Section 6.1 of the applicable

2  Annex A provides in its entirety:

3          6.1    Marshalling
4          6.1.1  (a)    Provide
                  or
5                 (b)    Arrange for
6                 Marshalling at arrival or departure

7          Section 6.1.1 only provides for "Marshalling at arrival and or departure."

8  Without providing any legal or factual basis, UAL argues in its Motion to Compel

9  that the services provided by UAL's Ramp Controller constitute "marshalling."

10  UAL's attempt to suggest that a Ramp Controller, sitting in a tower more than fifty

11  feet above the ground, who admittedly did not see ANA's airplane when he was

12  communicating with its crew after it departed the parking area at Gate G 95, was

13  performing "marshalling" services under the SGHA is without factual support or

14  any basis in reality.  Likewise, none of the other contracted for services listed in

15  Annex B and described in Section 6 of Annex A were being provided at the time of

16  the Accident.  The "parking" services of Section 6.2, if provided at all, had long

17  since ceased at the time of the Accident.  The services provided by UAL pursuant

18  to Section 6.3 of the 2002 Annex A were:

19          6.3.1  Provide headsets.
20          6.3.2  Perform ramp to flight deck communication
                  (a)    during tow-in and/or push-back.
21                 (b)    during engine starting.

22  Here again, none of these services were being provided to ANA by UAL at the

23  time of the Accident and ANA had completed "push-back" and "engine starting."

24  At the time of the Accident, ANA was taxiing under its own power long after UAL

25  provided any service under the SGHA.  UAL's reference in its Reply in Support of

26  Motion to Compel to the "for other purposes" wording in Annex A Section

27  6.3.2(c), is clearly omitted from the list of contracted for services delineated by

28

-8-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   Annex B.  Thus, none of the services agreed to by ANA and UAL were being
2   provided under the 2002 SGHA at the time of the Accident nor gave rise to the
3   damages.

4       With respect to "marshalling," UAL argues in its Reply in Support of
5   Motion to Compel that it "has shown that the common dictionary definition of the
6   term applies to the type of services ANA alleges that United negligently provided.
7   One is permitted to refer to dictionary definitions when construing contractual
8   terms."  This is disingenuous.  UAL pulled a couple words out of context from the
9   general dictionary definition of "marshalling" to fit its arguments.  However, this
10  term is being used in an aviation context and must be defined accordingly.  UAL's
11  citation to *Coyle v. P.T. Garuda Indonesia*, 363 F. 3d 979, 988 (9th Cir. 2004) to
12  support its use of a dictionary definition is misguided.  That case likens such use to
13  "evidence of trade usage," which is more appropriate given the aviation context.
14  *Id.*  The trade usage definition of marshalling in aviation is contrary to UAL's
15  allegations.

16      It is common knowledge in aviation that "marshalling" is a function of
17  someone on the ground, such as a wing walker or guide, guiding an aircraft with
18  visual signals, like those shown in the Federal Aviation Administration ("FAA")
19  Aeronautical Information Manual Section 4-3-25.  See Turner Decl., Exhibit F.
20  For UAL's counsel to argue that a controller in a tower high above the ground with
21  no visual contact with the departing aircraft far from its parking area constituted
22  marshalling is disingenuous at best.  The Air and Space Interoperability Council,
23  an international organization working in conjunction with its member nations'
24  respective air forces, defines "aircraft marshalling" as, "The directing by visual or
25  other signaling of the taxiing of aircraft into predesignated positions.  Also called
26  aircraft parking."  ASIC GLOSSARY OF TERMS AND DEFINITIONS.  See Turner Decl.,
27  Exhibit G.  The North Atlantic Treaty Organization defines "aircraft marshaller"
28

-9-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   as, "A person trained to direct by visual or other means the movement of aircraft

2   on the ground into and out of landing, parking or hovering points." It also notes

3   that this definition applies to the term "aircraft guide." NATO GLOSSARY OF

4   TERMS AND DEFINITIONS. See Turner Decl., Exhibit H.

5       This is consistent with UAL's own training manual for "guidepersons." See

6   "Ramp Services Trainer Aircraft Guideperson & Wingwalker," Turner Decl.,

7   Exhibit I. UAL's training manual shows the hand signals and wand positions to be

8   used when guiding aircraft on the ground. Moreover, this same UAL document

9   uses "Marshall" and "guideperson" synonymously when it states, "A Marshall or

10  guideperson is required for *all* aircraft arrivals." Turner Decl., Exhibit I, Receipt

11  and Dispatch Summary – 1. UAL has provided no rule or definition by any

12  aviation organization that resembles the definition it attempted to fabricate from

13  Mr. Webster's dictionary.

14      Furthermore, at the time of the Accident, UAL's Ramp Controller was

15  performing FAA functions with respect to communications with inbound and

16  outbound aircraft, not services provided under any SGHA with any airline.

17  Pursuant to agreements, unrelated to any SGHA, these FAA functions were

18  delegated to UAL. In an agreement between the FAA and San Francisco Terminal

19  Equipment Co. ("SFOTEC"), the FAA delegated responsibility for the operation of

20  Ramp Tower G to SFOTEC. See Turner Decl., Exhibit J. In an agreement

21  between SFOTEC and UAL, SFOTEC transferred such responsibility to UAL. See

22  Turner Decl., Exhibit K. It is clear under these agreements, which delineate duties

23  in connection with the operation of Ramp Tower G and establish procedures for

24  arriving and departing aircraft, that the Ramp Controller services were provided to

25  all airlines regardless of whether they entered into an SGHA with UAL, including

26  UAL's rival American Airlines whose planes operated in the Tower G area. In

27  accordance with the FAA and SFOTEC agreements, the Ramp Controller

28

-10-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  operating in Ramp Tower G at the time of the Accident was a UAL employee who
2  was performing FAA functions which had been delegated first to SFOTEC and
3  then to UAL.  None of these duties were performed under an SGHA.

4  UAL misconstrues the FAA/SFOTEC/UAL agreements in its Reply in
5  Support of Motion to Compel.  UAL misstates ANA's position by proffering that
6  ANA's contention is that the MOU with SFOTEC "somehow supersede[s] the
7  terms of the SGHA and its Annexes."  In accordance with the foregoing, this is
8  obviously not the case.  ANA does not contend that the aforementioned agreements
9  "supersede" the SGHA, but rather that they establish that any service that may
10  have been provided to ANA by UAL's Ramp Controller after it left the engine
11  starting area would have been an FAA function pursuant to these agreements and
12  distinct from any service set forth in the SGHA.  Furthermore, UAL's argument
13  concerning the modification of a contract is baseless.  UAL cites to the dissent in
14  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998),
15  which sets no precedent for this Court.  In any event, the terms of the foregoing
16  FAA/SFOTEC/UAL agreements in no way modify the SGHA because the services
17  involved are distinct from those covered by the SGHA.

18  The functions delineated in the FAA agreement with SFOTEC and in the
19  SFOTEC agreement with UAL to operate the Ramp Tower G clearly do not
20  involve any realistic definition of "marshalling."  UAL has extracted a few
21  selective words from a Webster's dictionary, but has offered no factual or legal
22  support for its contrived definition of "marshalling."  UAL's own Ramp Services
23  Trainer manual contradicts this definition by using "marshall" and "guideperson"
24  synonymously.  UAL has provided no affidavit from its Ramp Controller or
25  anyone with knowledge of aviation terminology to support its position that the
26  Ramp Controller's radio contact from his tower was providing "marshalling" or
27  any other service under the SGHA.

28

-11-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    No marshalling of Flight NH007 was taking place at the time of the
2  collision, which was moving under its own power far from its parking gate
3  pursuant to clearances from UAL Ramp Control and the FAA controller in the
4  FAA Air Traffic Control Tower.  There was no one on the ground guiding or
5  signaling NH007.  Accordingly, no service was being provided to ANA under
6  section 6.1 of the SGHA at the time of the Accident or under any other SGHA
7  provision.

8    UAL argues in its Reply in Support of Motion to Compel that ANA has
9  alleged that "United's negligence arose out of providing marshalling services that
10  United's ramp controller provided to ANA" and that this serves as a basis for
11  deposing the PMK. See UAL's Reply in Support of Motion to Compel, p. 6.  This
12  statement is simply untrue.  Nowhere in its pleadings has ANA used the word
13  "marshalling" or any derivative thereof.  ANA has alleged that UAL's Ramp
14  Controller's actions or omissions were negligent because UAL's Ramp Controller
15  released UAL's Flight UA809 prematurely so as to interfere with ANA's Flight
16  NH007's taxi and a general failure to fulfill the responsibilities of an FAA
17  controller. See Complaint, ¶¶ 33-52.  The allegations made by ANA with respect
18  to UAL's Ramp Controller were made regarding duties and obligations of the
19  Ramp Controller under the law and not in connection to "marshalling" or any
20  service provided by UAL to ANA under the SGHA.

21    An air traffic controller's duties to pilots are defined by FAA Order 7110.65
22  – the Air Traffic Control Manual ("ATCM") – and common law. *In re Greenwood*
23  *Air Crash*, 924 F. Supp. 1518, 1535 (S.D.Ind. 1995).  The duties delineated in the
24  allegations made by ANA in its Complaint with respect to UAL's Ramp Controller
25  are established by such law. *See* ATCM §§ 2-1-2, 2-1-6, 2-1-21, 5-1-8; *Mgmt.*
26  *Activities, Inc. v. U.S.*, 21 F. Supp. 2d 1157 (C.D.Cal. 1998); *Greenwood Air*
27  *Crash*, *supra*; *Rodriquez v. U.S.*, 823 F.2d 735 (3d Cir. 1987); *In re Aircrash*
28

-12-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   *Disaster Near Cerritos, Cal., August 31, 1986*, 1989 WL 330820 (C.D.Cal. 1989).

2   UAL also argues in its Reply in Support of Motion to Compel that ANA

3   "improperly focuses on the term 'marshalling' to the exclusion of other SGHA

4   terms and provisions that arguably apply to United's counter-claims." However,

5   the sole service under the SGHA alleged by UAL in its First Amended Counter-

6   Complaint is section 6.1.1, which provides for marshalling.   First Amended

7   Counter-Complaint, ¶¶ 23, 31.   UAL fails to include allegations in its pleadings

8   concerning other "terms and provisions that arguably apply to United's counter-

9   claims."

10   UAL's Reply in Support of Motion to Compel makes the tenuous argument

11   that sections 10.1.3 and 10.2.8 and "still other provisions" of Annex A of the

12   SGHA apply to this matter.   However, these provisions were never raised by any

13   party in this matter until UAL's Reply and UAL provided no basis for these

14   provisions to have any application to this case.   Moreover, these sections are not

15   listed under the services contracted for in Annex B of the 2002 SGHA.   Since

16   ANA has effectively refuted UAL's "marshalling" argument, the sole provision

17   alleged by UAL's pleadings, UAL now makes a feeble attempt to fabricate an

18   alternate avenue to implicate the SGHA.   UAL is trying to hypothesize any

19   provision about which a claim could potentially be made while no claim has been

20   made about any such provision.   UAL is in effect endeavoring to replead for ANA

21   to bring the SGHA into play.   UAL has no factual or legal basis to do so.   UAL's

22   position is so untenable that it is trying to amend the pleadings in reply papers to

23   make issues relevant that neither party has plead or even suggested.   It is

24   respectfully submitted that such arguments should be disregarded by this Court.

25   //

26   //

27   //

28

-13-

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

**B. Good Cause Exists For A Protective Order Where, As Here, A Witness Who Resides And Works In A Foreign Jurisdiction Has Been Noticed For Deposition In The Forum State**

UAL's deposition notice states that the location of the deposition is Los Angeles, California. Although ANA has volunteered to produce its flight crew for depositions in California, the proper place for the deposition of a corporate employee is at the employee's place of business or residence, which in this case is Japan. *Six West Retail Acquisition, Inc. v. Sony Theatre Manag. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001); *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537 (D. Minn. 2003); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478 (10th Cir. 1995).

The court in *Chris-Craft Indus. Products, Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999) held that depositions of Japanese executives must be taken in Japan because, "[w]hen a corporation objects to a deposition being taken at a place other than its principal place of business, 'the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation.'" The court in *Chris-Craft* also noted that there is a "presumption that the corporation has good cause for a protective order." *Chris-Craft, supra*, 184 F.R.D. at 607.

Furthermore, ANA respectfully submits that pursuant to Federal Rules of Civil Procedure Rule 1 and Rule 26, justice requires that the Court issue an order protecting ANA and its corporate employees from annoyance, embarrassment, oppression and undue burden. Rule 26 provides that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" FED. R. CIV. PROC. 26 (West 2007).

Rule 1 requires that the Federal Rules of Civil Procedure, including Rule 26, should be "construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1 (West 2007). Thus, the Advisory Committee observed that there is an "affirmative duty of the court to exercise the

-14-

1911 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  authority conferred by these rules to ensure that civil litigation is resolved not only

2  fairly, but also without undue cost or delay." Advisory Committee Notes Rule 1,

3  1993 Amendment.

4      Within this framework, the United States Supreme Court instructed in

5  *Seattle Times Co. v. Rhinehart* that:

6          Because of the liberality of pretrial discovery permitted

7          by Rule 26(b)(1), it is necessary for the trial court to have
        the authority to issue protective orders conferred by Rule

8          26(c). It is clear from experience that pretrial discovery

9          by depositions . . . has a significant potential for abuse.

10  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 28, 81 L. Ed.2d 17, 104 S. Ct. 2199

11  (1984).

12      Although the federal discovery rules are very liberal, one federal district

13  court has stated that:

14          [t]he court should be alert to see that the liberal deposition

15          procedure provided in the Federal Rules is used only for
        the purpose for which it is intended and is not used as a

16          litigation tactic to harass the other side or cause it

17          wasteful expense.

18  *Armstrong Cork Co., v. Niagra Mohawk Power Corp.,* 16 F.R.D. 389, 390-91

19  (S.D.N.Y. 1954), *citing, Tactical Use and Abuse of Depositions under the Federal*

20  *Rules*, 59 Yale L.J. 117 (1949).

21      The United States Supreme Court, in *Societe Nationale Industrielle*

22  *Aerospatiale v. United States District Court for the Southern District of Iowa*,

23  considered the potential for abuse of the liberal discovery procedures implemented

24  by the courts in the United States where foreign litigants are involved. The

25  Supreme Court held that:

26          American courts, in supervising pretrial proceedings,

27          should exercise special vigilance to protect foreign
        litigants from the danger that unnecessary, or unduly

28

-15-

1
2
3
4
5
6
7
8
9
10

burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.

11
12
13

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 546, 107 S. Ct. 2542, 2557, 96 L. Ed. 2d 461,485(1987).

14
15
16
17
18
19
20
21
22
23
24

Nowhere in its motion does UAL indicate what light an ANA PMK might shed on UAL's claim that its Ramp Controller provided a marshalling service or any other service under the SGHA. As an IATA form agreement, used by almost all international airlines, the only negotiation was monetary. The IATA terms are standard provisions used by airlines all over the world and no negotiation or discussion of the interpretation of the wording contained therein is necessary. UAL knows full well that there was no negotiation of the interpretation of term marshalling or any other term. All negotiations concerning the SGHA in effect at the time of the Accident took place via email with the ANA negotiator sitting at his computer in Tokyo and the UAL negotiator sitting at his computer in Illinois. See Turner Decl., Exhibit L.

25
26
27
28

Since ANA is organized and exists under the laws of Japan with its principle place of business in Japan and the corporate employee who signed the SGHA resides and works in Japan and executed the SGHA in Japan, if a witness is to be

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-16-

1   produced on the subject of the SGHA, the appropriate place for such a deposition is

2   in Japan.

3

4                              **CONCLUSION**

5          In light of the foregoing, ANA respectfully submits that it has particularly

6   and specifically shown that good cause exists and justice requires that this Court

7   exercise its broad discretion under Rule 26 and issue a protective order (1)

8   prohibiting the deposition of a representative of ANA with respect to the SGHA; or,

9   alternatively, (2) requiring that a deposition of a PMK concerning the SGHA must

10  be held in Japan.

11  Dated: November 9, 2007          CONDON & FORSYTH LLP

12

13                         By: _____

14                                MARSHALL S. TURNER (*pro hac vice*)
                                   SCOTT D. CUNNINGHAM

15

16                                Attorneys for Plaintiff
                                   ALL NIPPON AIRWAYS COMPANY, LTD.

17

18

19

20

21

22

23

24

25

26

27

28

1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

-17-

# CERTIFICATE OF SERVICE

## ALL NIPPON AIRWAYS' MOTION FOR PROTECTIVE ORDER

I, hereby certify that on November 9, 2007 I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Scott R. Torpey, Esq.<br>Jaffe, Raitt, Heuer & Weiss<br>2777 Franklin Road, Suite 2500<br>Southfield, MI 48034-8214<br>Phone: (248) 727-1461<br>Fax: (248) 351-3082 | Attorneys for defendant |
| Jeffrey A. Worthe, Esq.<br>Worthe, Hanson & Worthe<br>The Xerox Centre<br>1851 East First Street, Ninth Floor<br>Santa Ana, CA 92705 | Attorneys for defendant |

HEATHER L. JACKSON

Sworn to before me this
9th day of November, 2007

Notary Public

TINA M. ZOCCALI
Notary Public, State of New York
No. 01ZO6059025
Qualified in Rockland County
Commission Expires May 21, 20 11

-18-

ALL NIPPON AIRWAYS COMPANY, LTD.'S MOTION FOR
PROTECTIVE ORDER
CASE NO.: C07-03422 EDL

1701 Avenue of the Stars, Suite 650
Los Angeles, California 90067-6010
Telephone: (310) 557-2030